UNITED STATES, Appellee,

v.

Darwinn DAVIS, Hospitalman,
U.S. Navy, Appellant.

No. 99–0764.
Crim.App. No. 97–1012.

U.S. Court of Appeals for
the Armed Forces.

Argued March 1, 2000.

Decided July 19, 2000.

GIERKE, J., delivered the opinion of the Court, in which SULLIVAN and EFFRON, JJ., and COX, S.J., joined. CRAWFORD, C.J., filed an opinion concurring in part and dissenting in part.

For Appellant: *Lieutenant M. Eric Eversole*, JAGC, USNR (argued); *Major Stephen D. Chace*, USMC.

For Appellee: *Lieutenant James E. Grimes*, JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Commander Eugene E. Irvin*, JAGC, USN (on brief).

Judge GIERKE delivered the opinion of the Court.

Appellant was charged with the unpremeditated murder of his infant daughter and making a false official statement, in violation of Articles 118 and 107, Uniform Code of Military Justice, 10 USC §§ 918 and 907, respectively. A general court-martial composed of officer and enlisted members convicted him, contrary to his pleas, of involuntary manslaughter, a lesser-included offense of unpremeditated murder, in violation of Article 119, UCMJ, 10 USC § 919, and making a false official statement. The adjudged and approved sentence provided for a dishonorable discharge, confinement for 8 years, total forfeitures, and reduction to the lowest enlisted grade.

The Court of Criminal Appeals affirmed the conviction of involuntary manslaughter but set aside the conviction of making a false official statement, because it found the evidence factually insufficient. *See* Art. 66(c), UCMJ, 10 USC § 866(c). It reassessed the sentence and reduced the confinement from 8 years to 7 years. 50 MJ at 680, 685.

On appellant's petition, this Court granted review to determine whether the military judge erred by failing to instruct on the defense of accident and by failing to instruct on the lesser-included offense of negligent homicide in violation of Article 134, UCMJ, 10 USC § 934.[1]

### Factual Background

On May 9, 1995, appellant's 9–month–old daughter died as a result of edema, caused by a subdural hematoma. The prosecution theory was that appellant killed his infant daughter by striking and shaking her. The defense theory was that the infant was fatally injured because she was not properly secured in her car seat when appellant swerved his vehicle to avoid a traffic accident.

There were no witnesses to the infliction of injuries on the infant or the alleged traffic incident, except for appellant. It was uncontested that the infant was in appellant's custody when the fatal injuries occurred.

Appellant made three statements explaining the infant's injuries. In all three, he described an incident where he violently swerved and braked to avoid a traffic accident. There was no collision. On May 9, 1995, immediately after the infant was taken to a Japanese hospital, appellant told Naval Criminal Investigative Service Special Agent Ronald Beltz that he buckled the infant into

---

1. The granted issue is: WHETHER THE TRIAL JUDGE ERRED BY FAILING TO GIVE AN INSTRUCTION *SUA SPONTE* ON THE DEFENSE OF ACCIDENT OR A LESSER–INCLUDED INSTRUCTION ON NEGLIGENT HOMICIDE.

her car seat but forgot to buckle the seat belt to the car seat. 50 MJ at 677.

In a written statement executed on June 6, 1995, after the autopsy was completed, appellant said:

My daughter was on the floor-board in front of the rear seat, half twisted out of her car seat and crying. She was still too small for the straps on the car seat. The car seat was resting on top of her. The cushion bar on the car seat was still in the down position. The car seatbelt for the left rear seat had somehow disconnected and allowed the car seat to fall forward.

*Id.* This statement was the basis for charging appellant with making a false official statement.

In a third written statement on June 6, 1995, after appellant attempted to demonstrate how the accident happened, he stated that he had not told "the complete truth about what happened." In this statement, he said that he had forgotten to strap the infant into her car seat, and that he had only pulled the cushioned bar down. *Id.*

The trial was a battle of experts. The prosecution relied heavily on expert medical witnesses, whose testimony was set out in detail by the court below. 50 MJ at 678–79. The Government experts opined that the infant died from injuries inflicted by violently shaking her. They also opined that the injuries could not have been inflicted by the traffic accident described by appellant.

Appellant did not testify, but instead relied on his three pretrial statements to establish the factual predicate for his defense. The defense produced experts who opined that the injuries could have been inflicted as a result of the traffic accident. The defense also produced the testimony of four witnesses—two working acquaintances, a supervisor, and a close friend and neighbor—all of whom characterized appellant as a loving and caring father.

Defense counsel proposed instructions on findings that included an instruction that involuntary manslaughter is a lesser-included offense of unpremeditated murder. The military judge gave the requested instruction. He instructed the members that the elements of the lesser-included offense were: (1) that the victim was dead; (2) "that her death resulted from the acts of the accused in striking and shaking her"; (3) that the killing of the victim by appellant was unlawful; and (4) "that at the time of the killing the accused was participating in the commission of the offense of assault consummated by a battery, an offense directly effecting [sic] the person of [the victim]." The court members found appellant guilty of the lesser-included offense.

The defense did not request an instruction on the defense of accident, nor did it request an instruction on negligent homicide as a lesser-included offense of unpremeditated murder. The defense did not object to the instructions that were given.

Appellant now contends that the military judge erred in his duty to *sua sponte* instruct the members on affirmative defenses and lesser-included offenses. He argues that the defense did not affirmatively waive instructions on accident and negligent homicide, but only passively accepted the instructions offered by the military judge.

The Government asserts that appellant was not entitled to an instruction on accident, because his own version of events admits that he was negligent. The Government also asserts that appellant was not entitled to an instruction on negligent homicide under the facts of this case, because negligent homicide by failing to properly secure a child in a car seat is factually distinct from the offense of involuntary manslaughter by shaking and striking a child, and appellant was not on notice that he might be required to defend against the lesser-included offense. Finally, the Government argues that any error in failing to instruct on negligent homicide was harmless, because the court members rejected appellant's version of the facts by convicting him of making a false official statement.

*Discussion*

RCM 920(f), Manual for Courts–Martial, United States (1995 ed.),[2] provides as follows: "Failure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error." In *United States v. Taylor*, 26 MJ 127, 128 (CMA 1988), this Court held that the waiver rule in RCM 920(f) applies only to the instructions listed in RCM 920(e)(7), but does *not apply to* " '[r]equired instructions' such as those on reasonable doubt, elements of the offenses, and affirmative defenses[.]"

 When evidence is adduced during the trial which "reasonably raises" an affirmative defense or a lesser-included offense, the judge must instruct the court panel regarding that affirmative defense or lesser-included offense. *See United States v. Rodwell*, 20 MJ 264 (CMA 1985); *United States v. Verdi*, 5 MJ 330 (CMA 1978). The test whether an affirmative defense is reasonably raised is whether the record contains some evidence to which the court members may attach credit if they so desire. *See United States v. Simmelkjaer*, 18 USCMA 406, 410, 40 CMR 118, 122, 1969 WL 6025 (1969). The defense theory at trial is not dispositive in determining what affirmative defenses have been reasonably raised. *United States v. Taylor, supra.* Any doubt whether an instruction should be given should be resolved in favor of the accused. *United States v. Steinruck*, 11 MJ 322, 324 (CMA 1981).

 Thus, the military judge has an affirmative duty to instruct the members on the affirmative defense of accident if reasonably raised by the evidence. *United States v. Watford*, 32 MJ 176 (CMA 1991). However, for a defense of accident to be reasonably raised in connection with driving a car, the evidence must show that "the driver was driving carefully, lawfully, and without neglect[.]" *United States v. Curry*, 38 MJ 77, 80 n. 6 (CMA 1993). We conclude that an instruction on the defense of accident was not required in this case, because appellant admitted that he was negligent by failing to properly secure his infant daughter in her

car seat. Accordingly, we hold that the military judge did not err by failing to instruct the members on the affirmative defense of accident.

 We turn next to the question whether an instruction on negligent homicide was required. In *United States v. Strachan*, 35 MJ 362, 364 (CMA 1992), this Court held that "[i]nstructions on lesser-included offenses are required unless affirmatively waived by the defense." Negligent homicide is a lesser-included offense of unpremeditated murder and involuntary manslaughter. Paras. 43d(2)(c) and 44d(2)(b), Part IV, Manual, *supra.* Negligence is merely a *"legally less serious"* element of the intentional killing involved in murder and the battery involved in involuntary manslaughter. *See United States v. Weymouth*, 43 MJ 329, 333 (1995). It is not an additional element, as suggested by the lower court, 50 MJ at 682, but *"rationally* derivative of" the elements of the greater offenses. *United States v. Foster*, 40 MJ 140, 146 (CMA 1994). As the defense did not affirmatively waive an instruction on negligent homicide in this case, the military judge was required to instruct on the lesser-included offense of negligent homicide if the evidence reasonably raised it. *See United States v. Wells*, 52 MJ 126, 129–30 (1999).

 We hold that the military judge's failure to instruct on the offense of negligent homicide was error. The evidence in this case raised four possibilities: (1) appellant intentionally shook his daughter to death (murder); (2) he intentionally battered her and she died (involuntary manslaughter); (3) he negligently killed her by shaking her (negligent homicide); or (4) he negligently killed her by failing to properly secure her in her car seat (negligent homicide). The members were not instructed to consider the third and fourth possibilities.

 Turning to the question of prejudice, we join the court below in rejecting the Government's argument that the error was harmless because the court members reject-

2. All Manual provisions are cited to the version applicable at trial. The current version is un- changed, unless otherwise indicated.

ed the "car seat" theory of the defense. *See* 50 MJ at 680. The court members were never instructed to consider it, either as an affirmative defense or as a lesser-included offense. Defense counsel's argument presented the "car seat" theory as a complete defense, not as a lesser-included offense. While the members convicted appellant of a false official statement, this offense arose from appellant's statement that "[t]he car seatbelt for the left rear seat had somehow disconnected and allowed the car seat to fall forward." Appellant later admitted that this statement was false, in that he had not attached the seatbelt. The members were never required to address whether appellant's negligence in any form—not attaching the seatbelt to the car seat, not properly fastening the straps in the car seat, or negligently shaking her—was the cause of the child's injuries and death. This deficiency in the instructions requires that we set aside appellant's conviction of involuntary manslaughter. *See Wells*, 52 MJ at 130–31.

## Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing on the finding of guilty of involuntary manslaughter and the sentence may be ordered.

CRAWFORD, Chief Judge (concurring in part and dissenting in part):

Once again our Court is faced with the delicate balance between ensuring a fair trial and allowing counsel to litigate the court-martial in the best interests of his or her client.

I agree with the majority that no instruction on accident was either requested or merited in this case. *See* RCM 916(f) and 920(f), Manual for Courts–Martial, United States (1995 ed.); *United States v. Curry*, 38 MJ 77, 80 (CMA 1993).

Contrary to the majority, I find that appellant waived any negligent homicide instruction in this case and find no plain error in the

military judge's failure to give one. *See* RCM 920(f). We review a military judge's decision to give or not give an instruction, as well as the substance of that instruction, *de novo*. *United States v. Maxwell*, 45 MJ 406, 424 (1996). Even though not requested by a litigant, a military judge may have a *sua sponte* duty to give some instructions when reasonably raised by the evidence. *See* RCM 920(e); *United States v. Rodwell*, 20 MJ 264, 265 (CMA 1985); *United States v. Steinruck*, 11 MJ 322, 324 (CMA 1981). Military judges have "substantial discretionary power in deciding on the instructions to give." *United States v. Damatta–Olivera*, 37 MJ 474, 478 (CMA 1993), *cert. denied*, 512 U.S. 1244, 114 S.Ct. 2760, 129 L.Ed.2d 875 (1994).

As this court did last term in *United States v. Smith*, 50 MJ 451 (1999), and *United States v. Griffin*, 50 MJ 480 (1999), we apply the rules, not in an inflexible fashion, but in a manner that allows us to decide whether the failure to instruct undermines an appellant's right to have a panel of members provide him the guarantees found both in the Constitution and Uniform Code of Military Justice. *See Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *see generally Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

We have previously determined that to establish waiver, an attorney, advocating zealously on behalf of his client, must take some affirmative action to manifest a purposeful rejection of an instruction. *See United States v. Strachan*, 35 MJ 362, 364 (CMA 1992) ("An affirmative waiver is not the same as a passive failure to request an instruction or object to its admission."). There has not been an allegation of ineffective assistance of counsel raised before us.

Any defense counsel has a right to waive a lesser-included offense instruction that would damage, if not totally undermine, defense counsel's theory of the case. From his opening statement to his closing argument, appellant's trial defense counsel had but one clear-

cut strategy: convince the members that appellant's daughter died as a result of appellant's having swerved the car to avoid an accident while en route to pick up his wife from work in Yokohama, Japan.

Appellant did not testify at trial. However, he made several statements prior to trial, both written and oral, during the investigation of his daughter's death. While these statements could easily have been interpreted as showing appellant was negligent in preparing his 9–month–old daughter for travel in a car seat, defense counsel never conceded his client's negligence at trial. Accordingly, the fourth possibility mentioned by the majority (negligently killing his daughter by failing to properly secure her in the car seat), 53 MJ at 205, was a scenario which defense counsel had to avoid at all costs in his trial of the case. Appellant pled not guilty. By requesting an instruction on the lesser-included offense of negligent homicide by failing to properly secure his daughter in a car seat, appellant would have virtually conceded his guilt to that offense, given his pretrial admissions.

As we have previously held in *Griffin*, 50 MJ at 481, in reliance on *Rodwell*, 20 MJ at 265, the military judge does have a duty to instruct *sua sponte* on all lesser offenses *reasonably raised by the evidence*. In my judgment, the majority's third possibility (negligently killing his daughter by shaking her), 53 MJ at 205, was not reasonably raised by the evidence in this case. If such were the case, I would agree with the majority that the military judge's failure to instruct on this possibility was error, absent affirmative waiver. The Government's theory of the case from its opening statement to closing argument was "that the accused shook and struck his child because the medical evidence is incontrovertible." Trial counsel talked about the differences between murder and involuntary manslaughter, but the Government never failed to maintain that the harm appellant inflicted on his daughter was intentional. The Government never hinted at negligence by shaking as a theory of how the victim died.

Of course, defense counsel never conceded that the victim could have died as a result of shaken baby syndrome. The defense contended that appellant was a good parent, and that the evidence did not show that the victim was ever subjected to any form of the shaken baby syndrome—purposefully or negligently. Defense counsel contended that the young daughter had died of edema caused by moderate to mild trauma, such as would have happened when the victim either fell from her car seat or the car seat toppled over in the car. Defense counsel analogized the victim's death in this case to that of a 20–year–old athlete who drops dead after sustaining a minor injury. The counsel refuted the Government's theory of shaken baby syndrome in both argument and cross-examination by contending that the investigators decided why the child had died and then looked and looked until they found enough coincidences of body trauma to justify a shaken baby syndrome analysis.

Both Government and defense counsel proposed instructions. Neither counsel proposed an instruction on negligent homicide as a lesser-included offense, and logically so, in light of the way each counsel litigated his theory of the case. Defense counsel's only objection to the judge's proposed instructions were "to the extent that they differ from the defense's." In sum, the lesser-included offense of negligent homicide (by negligently shaking the child) was not raised by the evidence presented. Further, neither counsel asserted that the evidence given to the factfinders would justify such an instruction.

As the court said in *United States v. Smith*, "An attorney has a duty to be a zealous advocate for his client. No magic words are required to establish a waiver. Statements such as those made here are more than sufficient to show that defense counsel made a purposeful decision to agree to the military judge's ... instructions." 50 MJ at 456. In this case, defense counsel made an affirmative, intelligent decision, based upon the Government's evidence and his client's pretrial statements, to waive any possibility that his client would be convicted of negligent homicide through the military judge's instructions. While a defense theory

of the case may not always be dispositive of an instructional issue, the manner in which this case was defended leads ineluctably to but one conclusion—trial defense counsel affirmatively avoided, not overlooked, and thus waived any negligent homicide instruction. *See United States v. Taylor,* 26 MJ 127 (CMA 1988).