# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 TAYLOR J. CRAWFORD**
**United States Army, Appellant**

ARMY 20120527

Headquarters, V Corps
Christopher T. Fredrikson and Wendy P. Daknis, Military Judges
Colonel Mark D. Maxwell, Staff Judge Advocate

For Appellant: Colonel Kevin Boyle, JA; JA; Major Amy E. Nieman, JA; Captain Matthew M. Jones, JA (on brief).

For Appellee: Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Robert A. Rodrigues, JA; Captain Steve T. Nam, JA (on brief).

30 September 2014

---------------------------------
SUMMARY DISPOSITION
---------------------------------

Per Curiam:

A panel of officer and enlisted members, sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of willful disobedience of a superior commissioned officer, one specification of assault by intentionally inflicting grievous bodily harm, one specification of assault consummated by battery, one specification of drunk and disorderly conduct, and two specifications of obstruction of justice, in violation of Articles 90, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 928, 934 (2006) [hereinafter "UCMJ"]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for five years, and forfeiture of all pay and allowances.

This case is before us for review under Article 66, UCMJ. One of appellant's assignments of error warrants discussion and relief. In particular, appellant's claim that the military judge should have given instructions regarding conflicting orders has merit. Appellant's personal submissions pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) do not warrant relief.

**BACKGROUND**

In July 2011, appellant savagely beat a German national, TM. After consuming a significant amount of alcohol, appellant and some fellow soldiers began walking down a German street, acting aggressively toward others and damaging a vehicle. Eventually, appellant walked up behind TM and tapped him on the shoulder. As TM turned around to look, appellant punched TM in the face. Appellant and TM had never met before this moment. TM stumbled to the ground and appellant began kicking him. TM managed to throw his wallet in the air, get up, and try to run away. Appellant chased him across the street and began kicking him again. After the beating stopped, appellant turned to his confederates and said, "Did y'all see me fuck that guy up?" TM suffered a multiple upper arm fracture on his right side and a massive soft part injury on his upper arm.

As a result of this attack on TM, appellant's company commander issued a written order to appellant to, among other restrictions, not to have any contact with Specialist (SPC) TMcC. Appellant was to stay at least fifty feet away from SPC TMcC. However, less than two weeks later, appellant and SPC TMcC were placed on a work detail to clean and organize a CONEX box. Both appellant and SPC TMcC were aware of the order to stay at least fifty feet away from each other. While working on the detail, appellant pulled SPC TMcC aside, put his arm around his shoulder, and said, "So what are you talking to CID about? You shouldn't be talking to them. If it's about me, that's bullshit. You know, you shouldn't screw your friends over." This conduct formed the basis for appellant's conviction for willful disobedience of a superior commissioned officer (Specification 1 of Second Additional Charge I) and one of appellant's obstruction of justice convictions (Specification 1 of Additional Charge II).

The government charged appellant with willfully disobeying the lawful command "to remain at least 50 feet away from [SPC TMcC]," but the specification did not state with particularity how appellant willfully disobeyed the order. At trial, SPC TMcC admitted that he knew that working on the CONEX box detail would place him within fifty feet of appellant. However, SPC TMcC thought that "because [the CONEX box detail order] was given to me by my chain of command . . . that was all right." Either a platoon sergeant or a platoon leader gave SPC TMcC the order to work on the CONEX box detail.

At the conclusion of the government's case-in-chief, appellant's civilian defense counsel raised a Rule for Courts-Martial [hereinafter R.C.M.] 917 motion for a finding of not guilty for willful disobedience of a superior commissioned officer. Civilian defense counsel specifically raised the conflicting orders as the basis for the motion. The government argued that appellant broke the no-contact order when he placed his arm around SPC TMcC and spoke to him. Viewing the evidence in the light most favorable to the government, the military judge denied the

motion, stating "[t]here was testimony that [appellant] pulled him aside and that may be the moment the accused willfully disobeyed the no contact order."

When instructing the panel for findings, the military judge instructed the panel that the no-contact order was a lawful command as a matter of law. Although civilian defense counsel challenged the lawfulness of the no-contact order, he did not ask for, and the military judge did not provide, an instruction on any special or affirmative defense for this Article 90 offense. Civilian defense counsel argued at findings that appellant was in a "Catch-22" between two orders.

## LAW AND DISCUSSION

Military law has long recognized that a "criminal prosecution for disobedience of an order cannot be based upon a subordinate's election to obey one of two conflicting orders when simultaneous compliance with both orders is impossible. An individual cannot be expected to remain and depart at the same time." *United States v. Patton*, 41 C.M.R. 572, 573 (A.C.M.R. 1969); *United States v. Clausen*, 20 U.S.C.M.A 288, 289 43 C.M.R. 128, 129 (1971) (appellant entered improvident plea of guilty where he disobeyed an original order by following a countermanding order); *see also* William Winthrop, *Military Law and Precedents* 40 (2d ed. 1920 reprint) (noting that orders cannot conflict with the Constitution, statutes, and regulations). The precise contours of conflicting orders as a defense or defense tactic are less clear. Conflicting orders may be relevant to the defense in several ways. First, conflicting orders possibly can raise reasonable doubt to the evidence, particularly the element as to whether appellant willfully disobeyed. Second, an issue of conflicting orders possibly could raise a question as to the legality of an order.[1] Third, conflicting orders possibly can create an affirmative defense, where, while "not denying that an accused committed the objective acts constituting the offense, denies, wholly or partially, criminal responsibility for those acts."[2] R.C.M. 916(a). Our reasoning in *Patton* indicates that conflicting orders can establish such an affirmative defense.[3] These possibilities are not necessarily mutually exclusive, nor are they present in every case.

---

[1] Although appellant challenged the lawfulness of the no-contact order, we are convinced that both the no-contact order and the CONEX box detail orders were lawful. The problem is not the lawfulness of the orders, but the conflict between two lawful orders.

[2] Conflicting orders possibly could raise a mistake of fact as to whether one of the orders was no longer in effect.

[3] Put another way, in the general context of conflicting orders, a rational panel might conclude that by obeying one order, an accused necessarily yet intentionally defies the authority of the other order. Despite this factual finding, criminal liability

(continued . . .)

In this case, the government did not specify on the charge sheet how appellant willfully disobeyed the lawful command. Neither R.C.M. 307(c)(4), nor the model specification in the *Manual for Courts-Martial*, nor the model specification in the Military Judge's Benchbook require such specificity. *See Manual for Courts-Martial, United States* (2008 ed.), pt. IV, ¶ 14.f.(4); Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 3-14-2.*b.* (1 Jan. 2010). The effect of this charging decision, however, is an ambiguity as to how appellant disobeyed the order. The defense argued that appellant could not help but disobey the no-contact order by participating in the CONEX box detail. The government argued that the willful disobedience occurred when appellant put his arm around SPC TMcC and spoke to him about talking to CID.

We need not decide the precise limits of how an accused can use conflicting orders in his or her defense. However, under the facts of this case, two matters are clear. First, appellant cannot be guilty of willful disobedience under Article 90 because the panel is convinced appellant came within fifty feet of SPC TMcC solely because of the duty to participate in the CONEX box detail. Second, appellant can be guilty under Article 90 under the government's more limited theory, if the panel is persuaded beyond a reasonable doubt. The military judge did not instruct the panel on this distinction, and failure to do so is error under the facts of this case.[4] Put another way, to the extent that the orders were conflicting, appellant had an affirmative defense to Article 90. Criminal liability should not attach under Article 90, simply because a panel determined that appellant willfully disobeyed the no contact order by participating in the CONEX box detail. Appellant could also argue – and did argue – that the conflicting orders raised reasonable doubt as to the strength of the government's case. At the same time, the government's limited theory of criminality was a viable ground for the panel to convict.

If an affirmative defense is reasonably raised by the evidence, the military judge has a sua sponte duty to instruct the members on that defense."[5] *United States v. MacDonald*, 73 M.J. 426, slip op. at 22 (C.A.A.F. 2014) (citing *United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000)); *see also* R.C.M. 920(e). Although appellant did not specifically request an instruction about the conflicting orders,

---

(. . . continued)
should not attach in this general context. Hence, conflicting orders might be an affirmative defense.

[4] Although the Benchbook does not have an instruction for this situation, the military judge could have crafted one based in part on the language in *Patton*.

[5] In *MacDonald*, our superior court recently noted that the special defenses listed in R.C.M. 916 are an illustrative rather than exhaustive list of defenses. Slip op. at 23-24.

"waiver does not apply to 'required instructions . . . such as affirmative defenses[.]'" *United States v. Stanley*, 71 M.J. 60, 63 (C.A.A.F. 2012) (quoting *Davis*, 53 M.J. at 205). "Where an instructional error raises constitutional implications, this Court has traditionally tested the error for prejudice using a "'harmless beyond a reasonable doubt' standard." *United States v. Davis*, 73 M.J. 268, 271 (C.A.A.F. 2014) (quoting *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006)).

We are not convinced that this error was harmless. In denying appellant's R.C.M. 917 motion, the military judge noted that "[t]here was testimony that [appellant] pulled him aside and *that may be the moment* the accused willfully disobeyed the no contact order" (emphasis added). As our superior court noted in *MacDonald*, "[w]here the evidence can support multiple arguments, the accused is entitled to have the trier of fact, in this case the members, and not an appellate court, hear and test the credibility of the evidence based on proper instructions." Slip op. at 36. We are not confident that the panel convicted appellant solely based upon the government's theory.

We are able to reassess the sentence on the basis of the errors noted, and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). The gravamen of appellant's criminal conduct is unchanged, and appellant remains convicted of obstructing justice for his conduct in the CONEX box. Thus, we find no dramatic change in the penalty landscape. Lastly, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

## CONCLUSION

On consideration of the entire record, the matters submitted pursuant to *Grostefon*, and the assigned errors, the findings of guilty of Specification 1 of Second Additional Charge I and Second Additional Charge I are set aside. Second Additional Charge I and Specification 1 of Second Additional Charge I are dismissed. The remaining findings of guilty are AFFIRMED. Reassessing the sentence on the basis of the error noted and the principles of *Winckelmann*, the sentence is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court