UNITED STATES, Appellee,

v.

Charlie WATFORD, Jr., Sergeant First
Class U. S. Army, Appellant.

No. 63,802.

CM 8801349.

U.S. Court of Military Appeals.

Submitted July 19, 1990.

Decided April 11, 1991.

For Appellant: *Colonel Robert B. Kirby,
Lieutenant Colonel Russell S. Estey, Captain Alan M. Boyd, Captain Robin K.
Neff* (on brief).

For Appellee: *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J.
Dell'Orto, Major Martin D. Carpenter* (on
brief); *Captain John J. Hogan.*

*Opinion of the Court*

EVERETT, Senior Judge:

Contrary to his pleas, Sergeant Watford
was convicted of the premeditated murder
of his wife [1] and was sentenced to the
mandatory term of life imprisonment,[2] as
well as a dishonorable discharge, total forfeitures, and reduction to the lowest enlisted grade. These results were approved by
the convening authority and were affirmed
by the Court of Military Review in an unpublished opinion.

We granted review of appellant's case to
consider the following issue:

WHETHER THE MILITARY JUDGE
ERRED TO APPELLANT'S PREJUDICE BY FAILING, *SUA SPONTE*, TO
INSTRUCT THE MEMBERS ON VOLUNTARY INTOXICATION.

We conclude that he did not.

This homicide occurred after Watford
and his wife Mary had enjoyed a social
evening playing cards with another service
couple. The group also included First Sergeant Fuller of appellant's company. The
party had lasted from about 9 p.m. to about
1 a.m. the following morning. Before the

---

1. Art. 118(1), Uniform Code of Military Justice,
10 USC § 918(1).

2. *See* para. 43e(1), Part IV, Manual for Courts–
Martial, United States, 1984. The case was referred as noncapital.

party, Watford had consumed one rum drink; and during the evening, he had drunk another rum drink and two beers.

Ultimately, Watford and his wife returned home and began discussing the occasion. She told him that she had to make a telephone call, purportedly to a friend. However, from the conversation, Watford suspected that Mary was talking to a man. He went to the telephone, took it from her, and confirmed his suspicions.

At that point Watford struck his wife with the telephone. Not wishing to fight in front of their children, who were watching television, they went to their bedroom where an argument ensued. Mary admitted that she had talked to a man but asserted that the individual was a co-worker named Smith. Sergeant Watford expressed skepticism, and he suggested that Mary call the individual again so he could talk to him. Mary agreed.

Mary returned to the telephone and apparently began to dial. However, Watford doubted that she actually was attempting to contact anyone. He decided to scare her by getting a knife from the kitchen. When he returned with the weapon, Mary screamed, at which point he struck her and caused her lip to bleed. Mary again dialed the telephone and reported that she was receiving a busy signal.

Undeterred, Watford poked her with the knife several times—at least once, breaking the skin and drawing blood—and forced her to continue to try to make the call, listening on the telephone himself to hear the busy signal.

After several more attempts, she succeeded in contacting the other party. As Watford took the telephone, Mary told him that the person on the other end was someone he knew named Anthony. Watford told the court-martial that at that point he

lost all control. According to his testimony:

> I don't know what happened. I don't know what happened to me, but something happened to me. It was like a dream.... And I was just—it looked like I was just looking at myself and I was stabbing her and stabbing her and stabbing her, just stabbing and stabbing and stabbing. I couldn't do nothing. I just kept stabbing.

After recovering from the state of rage, Sergeant Watford apparently realized the enormity of his action. He attempted to call First Sergeant Fuller and then his company commander but with no success. He again called the first sergeant, and finally Fuller answered. Fuller was incredulous, but Watford persisted and requested that the military police be contacted.

In short order, the military police arrived.[3] Appellant was taken to the office of the Criminal Investigation Command (CID), where he was interviewed and provided a sworn written statement.

At trial, the facts surrounding the actual stabbing essentially were uncontroverted. Instead, Watford's defense was directed toward reducing the degree of his culpability. To that end, there was much testimony as to his appearance following the homicide: Defense counsel attempted to show that his client had been excited and emotional, while trial counsel responded with evidence that he had been calm.[4] Notably for this assignment of error, no witness described Watford as being intoxicated or showing the influence of alcoholic beverages.

After his apprehension, Watford had been questioned by Special Agent Burn of the CID. Burn related that Watford had appeared to comprehend the nature of his crime. While Watford initially had been somewhat anxious about the interview, he generally had been "very qui[et] and

3. In the interim, appellant also telephoned his sister and again confessed to killing his wife.

4. The Government offered most of the direct evidence of appellant's demeanor in an effort to show that the homicide was *not* the product of sudden passion, which otherwise would reduce the crime to either unpremeditated murder or voluntary manslaughter. *See* Arts. 118(2) and 119(a), UCMJ, 10 USC §§ 918(2) and 919(a), respectively.

calm." Special Agent Norman, a witness to the interview, described appellant as having been "sober and quite calm."

Sergeant Reiber, who had answered the call to Watford's apartment, stated that the latter had not been emotional when he met them at the door. Reiber had remained with Sergeant Watford in the apartment for the next 20 to 30 minutes and ultimately had escorted him to the military police station. Watford's demeanor had not changed during that time frame.

Staff Sergeant Cruz, a second military policeman on the crime scene, testified to essentially the same facts. She, too, had noted the lack of emotion in appellant's personality at the time.

Aside from Watford's statement to Burn and his own testimony, the only other direct evidence that appellant had consumed any alcohol was the testimony of First Sergeant Fuller. This witness corroborated Watford's testimony that he had consumed only a small amount of rum (one drink) and two beers while playing cards. Indeed, even in his confession to Burn, Watford had denied that he was intoxicated.

The remaining discussion of alcohol at the trial was in the testimony of Dr. (Major) Kevin Smith, a psychiatrist who testified as an expert on appellant's behalf. Dr. Smith had interviewed Watford and had concluded that he did not suffer from a mental disease or defect or from any recognizable psychiatric condition. He concluded, however, that Watford did have a tendency to react in a violent, aggressive manner when presented with certain situations. It was Dr. Smith's professional opinion that Watford did not have the intent to kill his wife at the time of the stabbing. However, this state was not due to a mental condition (at least, not in the classic sense); instead, it was a product of appellant's social background and development.

Additionally, Dr. Smith opined that, as a general matter, the ingestion of alcohol could have contributed to Watford's action at the time of the homicide. He explained that, as the level of alcohol in the blood rises, an individual's predisposition to react in a given manner (in Watford's case, with violent, aggressive behavior) increases. This could have contributed to what Smith believed was Watford's violent loss of temper when he learned that his wife was speaking with another man.

At the conclusion of the evidence, there was no defense request for an instruction on voluntary intoxication. On appeal, however, counsel asserts that the military judge should have instructed the members on that partial defense *sua sponte*. He contends that there was some evidence from which the members could have found that, due to alcoholic intoxication, Watford had not been capable either of premeditating or of forming the specific intent to kill his wife and that such evidence triggered the military judge's duty to instruct.

■ As counsel correctly argues, the military judge is under an affirmative duty to instruct on all elements of the offense and on any defense that reasonably is raised by the evidence at trial. *United States v. Taylor*, 26 MJ 127 (CMA 1988); *United States v. Steinruck*, 11 MJ 322, 324 (CMA 1981). Such a defense reasonably is raised when there is "some evidence" to which the members might attach credence. *United States v. Taylor, supra* at 129–30, quoting *United States v. Jackson*, 12 MJ 163, 166–67 (CMA 1981) (citation omitted).

■ Unfortunately for Watford, there was no such evidence in this case. There is no showing that he had consumed excessive amounts of alcohol; none of the witnesses described him as drunk; and he himself asserted that he was not intoxicated. Indeed, the testimony set out above is to the contrary.[5]

Moreover, the testimony of Dr. Smith adds nothing to appellant's argument. It is critical in this respect to make clear the

5. We also note that Watford's recollection of the events of the evening was lucid and straightforward. This hardly is the sort of testimony one would expect if he had been so intoxicated as to be unable to form the specific intent to kill.

distinction between two possible theories in a case such as this in which alcohol might have had a role.

First, Dr. Smith testified, in part, that *consumption* of alcohol might lower the threshold at which appellant might react in an excessively emotional manner. Since there was evidence of alcoholic *consumption,* that evidence—plus Smith's testimony—did raise the potential question of some lesser-included homicide. Therefore, the military judge correctly instructed the members as to several lesser-included homicide offenses.

Clearly distinct from this, however, is appellant's theory, which he has raised for the first time on appeal—namely, that his alcoholic *intoxication* legally prevented him from forming the specific intent to kill. Dr. Smith's testimony did not focus on this theory; and, even if it had, such testimony would have been irrelevant in light of the utter absence of any evidence of alcoholic *intoxication*—as opposed to alcoholic *consumption.*

Accordingly, we conclude that the judge's instructions provided the members with a proper legal framework within which they could evaluate the impact of evidence—if they believed it—regarding the role of alcohol in appellant's killing of his wife. Omission of the instructions now at issue in this appeal not only was not error but, indeed, was proper, inasmuch as they could have served only to confuse the members in the task before them.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judge COX concur.