CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TATE, HOLDEN, and HOFFMAN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class PHILLIP A. HEARN**
**United States Army, Appellant**

ARMY 20060128

82nd Airborne Division
Stephen R. Henley and Mark P. Sposato, Military Judges
Major William A. Schmittel, Acting Staff Judge Advocate (pretrial and addendum)
Lieutenant Colonel Steven J. Berg, Staff Judge Advocate (recommendation)

For Appellant:  Captain Nathan Bankson, JA (argued); Lieutenant Colonel Steven C. Henricks, JA; Major Fansu Ku, JA (on brief).

For Appellee:  Captain James T. Dehn, JA (argued); Colonel John W. Miller II, JA; Major Elizabeth G. Marotta, JA; Captain Michael J. Friess, JA; Captain James T. Dehn, JA (on brief).

17 July 2008

-------------------------------------------
OPINION OF THE COURT
-------------------------------------------

TATE, Chief Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of carnal knowledge and "indecent acts or liberties with a person under 16," in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934 [hereinafter UCMJ].  The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to Private E1. This case is before the court for review pursuant to Article 66, UCMJ.[1]

_____

[1] On 26 March 2008, we heard oral argument in this case at The Judge Advocate General's Legal Center and School in Charlottesville, Virginia.

(continued . . .)

Appellant asserts four assignments of error; only one merits relief. Appellant avers the military judge erred because he failed to instruct the panel sua sponte regarding the special defense of voluntary intoxication when there was "some evidence" raised of intoxication. Appellant, in pertinent part, cites *United States v. Watford*, 32 M.J. 176 (C.M.A. 1991) and the *Military Judges' Benchbook* to support this position.[2] Conversely, appellee, relying in part on this court's opinion in *United States v. Axelson*, 65 M.J. 501 (Army Ct. Crim. App. 2007), asserts a military judge has no sua sponte duty to instruct on voluntary intoxication.

We agree with appellant in this instance and find the evidence sufficiently raised the issue of voluntary intoxication; the military judge erred in not providing that instruction to the panel. We take this opportunity to clarify the obligation of a military judge to instruct on voluntary intoxication under Rules for Courts-Martial [hereinafter R.C.M.] 916(l)(2) and 920 and, more significantly, the quantum of evidence necessary to trigger that obligation. Although we set aside appellant's conviction for the specific intent offense of indecent acts with a child, in violation of Article 134, UCMJ, we affirm the conviction for the lesser included offense of indecent acts with another, also in violation of Article 134, UCMJ. We will grant appropriate relief in our decretal paragraph.

---

(. . . continued)

[2] *See* Legal Services, Dep't of Army, Pamphlet 27-9, *Military Judges' Benchbook*, ch. 5, para. 5-12 (2002) [hereinafter *Benchbook*]. The *Benchbook*, para. 5-12, advises:

> Voluntary intoxication from alcohol or drugs may negate the elements of premeditation, specific intent, willfulness, or knowledge. The military judge must instruct, sua sponte, on this issue when it is raised by some evidence in the case. Instructions on the elements of any lesser included offenses placed into issue should be given in such instances, and the relationship of those offenses with the principal offense and the defense of intoxication explained. Voluntary intoxication not amounting to legal insanity is not a defense to 'general intent' crimes, nor is it a defense to unpremeditated murder. Voluntary intoxication, by itself, will not reduce unpremeditated murder to a lesser offense.

**FACTS**

Appellant was charged with two specifications of carnal knowledge involving two different minor children, AD and AS. The panel convicted appellant of carnal knowledge with AD as charged. Regarding carnal knowledge with AS, the panel convicted appellant by exceptions and substitutions of the lesser included offense of "indecent acts or liberties with a person under 16 (AS)," under Article 134, UCMJ.[3]

*Specification 1 of The Charge*

At the time of the alleged offenses, appellant was a twenty-year-old private (E2) stationed at Fort Bragg, North Carolina. On or about 1 August 2005, appellant engaged in sexual intercourse with a fifteen-year-old girl (AD) approximately two weeks before her sixteenth birthday. AD became pregnant, but miscarried early in the pregnancy. Prior to the miscarriage, appellant admitted paternity. At trial, however, appellant denied paternity and claimed he made the prior admission in an effort to hide his homosexuality.

*Specification 2 of The Charge*

On 6 November 2005, appellant was alleged to have engaged in sexual intercourse with a fourteen-year-old girl (AS). This liaison took place in a nursery room at the Solid Rock United Methodist Church, where both AS and appellant attended religious services. The following day, on 7 November 2005, AS approached a lay clergyman, Mr. Jason Blakeman, and told him appellant engaged in sexual activities with her in the church. Mr. Blakeman contacted church officials who told him the incident must be reported to law enforcement authorities because AS was a minor. On his own initiative, Mr. Blakeman contacted appellant's parents and informed them of the allegation of sexual activity between AS and appellant. Mr. Blakeman explained to appellant's parents that Mr. Blakeman was not an ordained minister of that particular church; however, he was nonetheless a member of the clergy and was required by law to report the matter to the authorities.

---

[3] In his first assignment of error, relying on *United States v. Walters*, 58 M.J. 391 (C.A.A.F. 2003), appellant asserts the findings for Specification 2 of the Charge are too "vague and ambiguous" to enable us to affirm the conviction of the lesser-included Article 134, UCMJ, offense (indecent acts *or* liberties). We disagree and find no such ambiguity. *See United States v. Brown*, 65 M.J. 356 (C.A.A.F. 2007); *see also United States v. Neblock*, 45 M.J. 191, 195 (C.A.A.F. 1996) ("committing indecent acts with a child and taking indecent liberties with that child are violations of the same provision of military law.").

On 13 November 2005, at the insistence of his parents, appellant called Mr. Blakeman on his cellular phone.  Mr. Blakeman answered appellant's call while he was in the office of the deputy sheriff reporting the sexual allegation.[4]  After some initial discussion, appellant telephonically related his version of the events regarding AS to Mr. Blakeman including admitting appellant had sexual contact with her.

On 14 or 15 November 2005, three noncommissioned officers (NCOs) in appellant's supervisory chain approached appellant at his unit to discuss the allegation.  The NCOs ordered appellant to write a sworn statement explaining his version of the events.  One of the NCOs checked with appellant every few minutes until appellant completed the statement.  The military judge held this interrogation was custodial in nature and was conducted without advising appellant of his rights under Article 31, UCMJ.  Accordingly, he suppressed the statement.

On 16 November 2005, two of the NCOs involved in the prior questioning of appellant escorted him to the Harnett County Sherriff's Office for an interview requested by Detective McMurray.  Detective McMurray met in private with appellant and advised him that he was not in custody.  At the conclusion of the interview, appellant signed a sworn statement describing the events of 6 November 2005.  In the statement, appellant admitted he kissed AS; however, he maintained he could not recall what happened after the kiss.  Appellant averred he had limited recollection of the events due to extreme intoxication.

On 17 November 2005, appellant was apprehended and placed in the county jail.  Mr. Blakeman visited appellant in the jail, ostensibly in his capacity as a clergyman.  Once again, appellant relayed potentially incriminating statements to Mr. Blakeman.

Prior to trial on the merits, appellant moved to suppress several statements he made to Mr. Blakeman.  After an evidentiary hearing where appellant and Mr. Blakeman presented conflicting testimony, the military judge ruled appellant's statements to Mr. Blakeman were admissible.[5]  In addition to the motion to exclude

---

[4] The deputy sheriff, however, was not aware Mr. Blakeman was talking to appellant and appellant was unaware of Mr. Blakeman's location at the time of the call.

[5] In his second assignment of error, appellant alleges the military judge erred in admitting appellant's statements to Mr. Blakeman, in violation of Mil. R. Evid. 503. *See United States v. Shelton*, 64 M.J. 32, 37 (C.A.A.F. 2006).  Assuming arguendo, appellant's statements were privileged communications under Mil. R. Evid. 503, we

(continued . . .)

appellant's statements to Mr. Blakeman, appellant's motion to suppress several statements appellant made to Detective McMurray was also denied.[6]

## Trial on the Merits

### Prosecution Case-in-Chief

The government case-in-chief consisted of three witnesses who testified about appellant's sexual relationship and impregnation of AD, the subject of Specification 1 of the Charge, and four witnesses concerning the 6 November 2005 incident with AS, the subject of Specification 2 of the Charge.

---

(. . . continued)
find the error did not substantially prejudice appellant's rights. *See* Article 59a, UCMJ. In addition to the substantial testimony provided by government witnesses, appellant gave an otherwise admissible statement to a civilian detective and testified at trial. Therefore, any testimony provided by Mr. Blakeman regarding the substantive elements of Specification 2 that involved purported privileged communications was cumulative of other admissible testimony. Although not asserted by appellant, we also find appellant's due process rights were not violated by the arguably erroneous admission of appellant's statements to Mr. Blakeman. *See United States v. McAllister*, 64 M.J. 248, 250-51 (C.A.A.F. 2007) (finding a due process violation for nonconstitutional error when, if not for otherwise inadmissible evidence, "the defense would have been able to dramatically alter the evidentiary landscape").

[6] Appellant has failed to establish his initial unwarned statements to his unit's NCOs on 14 or 15 November 2005 were coerced. Such a finding would presumptively taint any subsequent confession. *See United States v. Cuento*, 60 M.J. 106, 109 (C.A.A.F. 2004) (when a prior statement is actually coerced there is a presumptive taint on any subsequent confessions). In this case, there were no threats or physical abuse by the NCOs. Additionally, the interrogation did not continue for a prolonged period of time and there was no evidence of imprisonment during questioning. Second, contrary to appellant's assertions, we find the 16 November 2005 interview with Detective McMurray was not a coercive event and was not given under coercion, force, or threats. The totality of the circumstances, to include appellant's relative age and maturity level, do not raise concerns about the statement's voluntariness. Under the totality of the circumstances surrounding the 14 or 15 November and 16 November 2005 statements, we conclude appellant's decision to make a second statement on 16 November 2005 was made voluntarily.

Concerning the 6 November 2005 incident, AS testified she and appellant were "hanging out" at church, along with approximately four other youths. AS left the group to go to the bathroom. When AS came out of the bathroom, the "nursery room door" was open and appellant was standing in the middle of the room. Appellant asked AS to come in to the room and then shut and locked the door. Appellant started kissing AS, took off his pants, and they had sexual intercourse for approximately two minutes. The intercourse was interrupted by knocking on the door. During the incident, AS did not recall smelling any alcoholic beverages on appellant's breath.

In addition to AS's testimony, her friend, KW, testified about her knowledge of the incident. KW was introduced to appellant by AS just prior to the alleged incident. When AS went to the bathroom, KW went to look for her. KW saw appellant, but did not witness anything out of the ordinary. When specifically questioned by a member of the panel concerning appellant's level of intoxication, KW testified appellant did not appear to be intoxicated.[7] KW spoke with appellant on the telephone after 6 November 2005 and appellant admitted to her he kissed AS and also conceded something more sexually overt might have occurred.

*Defense Case-in-Chief*

The defense case-in-chief centered principally upon the theory that appellant was a homosexual and, therefore, would never have sexual relations with a female of any age. However, this theory was undercut by appellant's sworn statement. Appellant testified he only admitted having sexual intercourse with AD and AS in his sworn statement because, "[m]e and my boyfriend can't have kids, and since I was about 16 I've always wanted kids, I've always wanted a family. It's kind of hard to do when you're a homosexual."

Appellant further described his relationship with AD and detailed the problems AD was having with her mother. When appellant discovered AD was pregnant, "I saw an opportunity to have a family and I wanted to take it. I wanted the kid. I wanted to be happy. I wanted a normal life." Appellant acknowledged he lied to "everyone" and when AD had a miscarriage "[i]t hurt a lot, it was a dream being flushed down the toilet."

Finally, appellant testified in detail about the incident on 6 November 2005 (Specification 2 of the Charge) in the following colloquy with his defense counsel:

---

[7] Mr. Blakeman also testified about his knowledge of the incident between AS and appellant. *See* footnote 4, *supra*.

DC:  Let's go to November 6th.  Tell me about what you planned on doing out there.

ACC:  I had wanted to kill myself, I wanted to end it.  I was tired of life, I was tired of not fitting in, not being normal.  It was, at the time, it was the only way I could see to just get away from it all.

I was going to get drunk, get up with a friend—he had a couple pistols, I was going to swipe one—go out back and put a bullet in my head.

DC:  Now, you told Detective McMurray that you couldn't remember anything after [AS] kissed you, is that the truth?

ACC:  Yes, ma'am.

DC:  Okay.  If you don't remember anything, how do you know you didn't have sexual intercourse with [AS]?

ACC:  After about two or three beers, the alcohol—I'm sexually-I can't get an erection with alcohol in my system.

Appellant later elaborated on this 6 November 2005 incident:

I had gone to youth--to church that morning with my family. . . .  [Later] I got out the alcohol and began to drink. . . .  We were there for a little while, pretty dark. . . .  I finished off my drink and threw it in the dumpster. . . .  Pretty much, I was pretty buzzed by that point, I can recall.

. . .

I don't even remember why I was in the room.  I can remember myself just standing there.  That's when a female walked in the room, closed the door.  At the time I didn't know who it was, it was not until I talked to Mr. Blakeman a week later, he's the one who told me it was [AS] that had come in the room.

I was buzzed.  The room was spinning and I remember her coming up to me, and I don't know whether

I passed out or what.  I remember kissing her and then it just went black.  I don't know if I passed out or what, sir.

In appellant's sworn statement and in his testimony at trial, appellant claimed he drank approximately twenty-four ounces of "Everclear" grain alcohol between the time he left the church and when he went back inside the church and encountered AS.  Appellant further testified less then an hour transpired between when he started drinking and when he blacked out.

### *Panel Instructions*

During a hearing conducted pursuant to Article 39(a), UCMJ, regarding potential panel instructions, the following colloquy ensued between the military judge, trial counsel, and defense counsel:

> MJ:  Do counsel see any lesser included offenses that are at issue in this case?
>
> TC:  No, Your Honor.
>
> . . .
>
> DC:  Sir, I do think that [AD] raises some evidence of indecent liberties if carnal knowledge is not there.  I mean, she talks about a relationship that went on between the two of them that involved not only sex but sexual touching.
>
> . . .
>
> MJ:  Okay.  I'll instruct on the elements of carnal knowledge and the lesser included offense of indecent liberties with a child.  I don't believe mistake of fact as to the age of either girl has been raised as an issue.

Furthermore, the defense proposed a physical impossibility instruction, which stated in pertinent part:

> The evidence has raised an issue of physical impossibility in relation to the offense of carnal knowledge with [AS].  In this regard, there has been testimony tending to show that the accused may have been intoxicated on the evening of 6 November 2005. . . .

8

If [sic] the accused's physical condition made it
impossible for him to have sexual intercourse. . . .  If you
are convinced beyond a reasonable doubt that at the time
of the charged offense it was physically possible for the
accused to have sexual intercourse, then the defense of
physical impossibility does not exist.

The military judge denied appellant's defense counsel's request for a physical
impossibility instruction and specifically asked appellant if there were "[a]ny other
instructions either side is requesting."  Both trial counsel and defense counsel
responded, "No."

The military judge then provided the panel with written instructions regarding
the elements of Specification 2 of the Charge and told the panel:

First . . . as to Specification 2, at or near Spout Springs,
North Carolina, on or about 6 November 2005, the accused
committed an act of sexual intercourse with [AS];

Second, that . . . [AS was] not the accused's wife;

And third, that at the time of the act of sexual intercourse,
. . . [AS was] under 16 years of age.

In advising the panel on the lesser-included offense of indecent acts with a
minor, the military judge informed the panel:

First . . . as to Specification 2, at or near Spout Springs,
North Carolina, on or about 6 November 2005, the accused
committed a certain act upon the body of [AS] by kissing
her and removing his pants and underwear, and asking her
to remove her underwear in each other's presence;

Second, that at the time of the alleged act, . . . [AS] was a
female under the age of 16 years;

Third, the act of the accused was indecent;

Fourth, that . . . [AS] was a person not the spouse of the
accused;

Fifth, that the accused committed the act with the intent to
gratify the lust or sexual desires of the accused;

9

And sixth, that under the circumstances the conduct of the
accused was to the prejudice of good order and discipline
in the armed forces, or was of a nature to bring discredit
upon the armed forces.

## LAW

### *Instructions*

"The question of whether a jury was properly instructed [is] a question of law,
and thus, review is de novo." *United States v. Schroder*, 65 M.J. 49, 54 (C.A.A.F.
2007) (citation omitted). "The military judge bears the primary responsibility for
ensuring that mandatory instructions . . . are given and given accurately." *United
States v. Miller*, 58 M.J. 266, 270 (C.A.A.F. 2003); *see also* R.C.M. 920(a).[8]

Required instructions on findings include "[a] description of the elements of
each lesser included offense in issue" and "[a] description of any special defense
[i.e. affirmative defense] under R.C.M. 916 in issue." R.C.M. 920(e). "A matter is
'in issue' when some evidence, without regard to its source or credibility, has been
admitted upon which members might rely if they choose." R.C.M. 920(e)
discussion. Further, although R.C.M. 920(f) provides "[f]ailure to object to an
instruction or to omission of an instruction before the members close to deliberate
constitutes waiver of the objection in the absence of plain error," our superior court
held this rule of waiver "does not apply to required instructions." *United States v.
Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000).

### *Instructions on Special Defenses*

If a special defense is reasonably raised by the evidence, the military judge
has a sua sponte duty to instruct the members on the defense. *United States v.
Davis*, 53 M.J. at 205 (citation omitted); *see also* R.C.M. 916. A defense is
reasonably raised when there is some evidence to which the panel members "might
attach credence." *United States v. Watford*, 32 M.J. 176, 178 (C.M.A. 1991). If

---

[8] The Discussion to R.C.M. 920(a) states:

> Instructions consist of a statement of the issues in the
> case and an explanation of the legal standards and
> procedural requirements by which the members will
> determine findings. Instructions should be tailored to fit
> the circumstances of the case, and should fairly and
> adequately cover the issues presented.

there is any doubt as to whether a lesser included offense or special defense is in issue, the doubt shall be resolved in favor of appellant. *Davis*, 53 M.J. at 205 (citing *United States v. Steinruck*, 11 M.J. 322, 324 (C.M.A. 1981)).

In military jurisprudence, special defenses include justification, obedience to orders, self-defense, accident, entrapment, coercion or duress, inability, ignorance or mistake of fact, and lack of mental responsibility. R.C.M. 916(c)–(k). "An accused may also raise voluntary intoxication, R.C.M. 916(l)(2), or partial mental responsibility [R.C.M. 916(k)(2)] to refute a specific intent mens rea element of an offense." *Axelson*, 65 M.J. at 513-14. Rule for Courts-Martial 916(l)(2) provides:

> Voluntary intoxication, whether caused by alcohol or drugs, is not a defense. However, evidence of any degree of voluntary intoxication may be introduced for the purpose of raising a reasonable doubt as to the existence of actual knowledge, specific intent, willfulness, or a premeditated design to kill, if actual knowledge, specific intent, willfulness, or premeditated design to kill is an element of the offense.

## DISCUSSION

### *Voluntary Intoxication*

As noted by appellant, the defense of voluntary intoxication is a mandatory instruction when "some evidence" of intoxication "raise[s] a reasonable doubt about actual knowledge, specific intent, willfulness, or premeditation when they are elements of a charged offense." *United States v. Hensler*, 44 M.J. 184, 187 (C.A.A.F. 1996); *see also Watford*, 32 M.J. at 178. Appellee's contrary position is understandable given the unclear language of R.C.M. 916 regarding voluntary intoxication. Indeed, R.C.M. 916 lists "voluntary intoxication" under a subheading entitled, "*not defenses generally*," and begins by stating unequivocally, "[v]oluntary intoxication, whether caused by alcohol or drugs, is not a defense." *Cf. United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241-42 (1989) (the plain language will control, unless use of the plain language would lead to an absurd result).

Notwithstanding the vague language of R.C.M. 916(l)(2), military courts have historically treated "voluntary intoxication" as a special defense.[9] We are cognizant "of the importance that the doctrine of stare decisis plays in our decision-making." *United States v. Rorie*, 58 M.J. 399, 406 (C.A.A.F. 2003).[10] Stare decisis is "most compelling" where courts undertake statutory and rule construction. *Hilton v. South Carolina Public Rys. Comm'n*, 502 U.S. 197, 205 (1991). We find nothing in the "precedent at issue [voluntary intoxication] unworkable or . . . badly reasoned" and, accordingly, will continue to apply voluntary intoxication as a defense to specific intent offenses. *United States v. Inong*, 58 M.J. 460, 464 (C.A.A.F. 2003) (quotation marks and citation omitted).

While we agree voluntary intoxication may be a defense to a specific intent crime, we disagree with appellant on the quantum of "some evidence" needed to mandate such a panel instruction. *See generally* R.C.M. 920(e). Although not well-articulated by the *Benchbook* or caselaw, evidence that an accused consumed intoxicants, standing alone, is insufficient to require a voluntary intoxication instruction. *See Watford*, 32 M.J. at 179 (noting the "utter absence of any evidence of alcoholic *intoxication* – as opposed to alcoholic *consumption*" (emphasis in original)). When raising an issue of voluntary intoxication as a defense to a specific intent offense, "there must be some evidence that the intoxication was of a severity to have had the effect of rendering the appellant incapable of forming the necessary intent, not just evidence of mere intoxication." *Peterson*, 47 M.J. at 234 (quotation marks and citation omitted) (a military judge has an obligation to discuss voluntary intoxication as a defense to a specific intent offense when reasonably raised during guilty plea inquiry).

---

[9] *See United States v. Peterson*, 47 M.J. 231, 234 (C.A.A.F. 1997); *Watford*, 32 M.J. at 178; *United States v. Mayville*, 15 U.S.C.M.A. 420, 35 C.M.R. 392 (1965); *United States v. Miller*, 2 U.S.C.M.A. 194, 7 C.M.R. 70 (1953); *see also* William Winthrop, *Military Law and Precedents* 293 (2d. ed. 1920 reprint) ("[T]he question of whether or not the accused was drunk at the time of the commission of the criminal act may be material as going to indicate what *species* or *quality* of offence was actually committed.").

[10] The doctrine of stare decisis is "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991).

We adopt a three-prong test to determine whether "some evidence" of voluntary intoxication was raised at trial: "A defendant is entitled to a voluntary intoxication jury instruction when: (1) the crime charged includes a mental state; (2) there is [evidence of impairment due to the ingestion of alcohol or drugs]; and (3) there is evidence that the [impairment] affected the defendant's ability to form the requisite intent or mental state." *State v. Kruger*, 67 P.3d 1147, 1149 (Wash. Ct. App. 2003) (citation omitted).[11] Put more concisely: "[T]he evidence must reasonably and logically connect the defendant's intoxication with the asserted inability to form the required level of culpability to commit the crime charged." *Id.* at 1149-50 (quotation marks and citation omitted).

We conclude there was sufficient evidence of voluntary intoxication to mandate a panel instruction. First, the offense of which appellant was convicted, indecent acts with a child, is a specific intent offense. *See United States v. Strode*, 43 M.J. 29, 32 (C.A.A.F. 1995) (noting that specific intent is needed for the element of "intent to arouse, appeal to, or gratify [one's] . . . sexual desires" for indecent acts with a child); *United States v. Kenerson,* 34 M.J. 704, 705 (A.C.M.R. 1992) ("[I]ndecent acts with another and indecent liberties (or acts) *with a child*. The former is a general intent crime; the latter requires a specific intent." (emphasis in original)). Second, evidence was presented that appellant consumed a substantial amount of alcohol—in particular "Everclear" (190-proof grain alcohol)—within approximately one hour of the charged offense.[12] In fact, appellant testified that he consumed between twenty and twenty-four ounces of "Everclear." Finally, appellant consistently maintained he could not recall a significant portion of his encounter with AS because he "was feeling the effects of alcohol" and the "room began to spin." Appellant further stated, "[t]he room was spinning and I remember her coming up to me, and I don't know whether I passed out or what. I remember kissing her and then it just went black."[13] In sum, we find the evidence in the record reasonably raised the affirmative defense of voluntary intoxication and the military judge's failure to instruct sua sponte on that defense constitutes legal error.

---

[11] Corrected

[12] *See Iowa v. Rohm,* 609 N.W.2d 504, 507 n.1 (Iowa 2000) (noting the potency and potential danger of grain alcohol such as "Everclear").

[13] It is noteworthy a panel member asked a specific question of a government witness regarding appellant's level of intoxication and mental state during the charged offense.

"Once it is determined that a specific instruction is required but not given, the test for determining whether this constitutional error was harmless is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). "Attempting to infer how court members might have voted if properly instructed is always risky business; and this case is no exception." *United States v. Rodwell*, 20 M.J. 264, 268 (C.M.A. 1985). Under the limited facts presented at trial, a properly instructed panel may have believed appellant could not form the requisite intent because of the effects of his heavy consumption of alcohol and inability to recollect the events of the charged offense. "We simply are unable to conclude that appellant was not prejudiced here by the instruction omission." *Id*. We hold the failure of the military judge to instruct on the affirmative defense of voluntary intoxication was prejudicial error and cannot affirm appellant's conviction for indecent acts or liberties with a child.

### *Lesser Included Offense*

Our conclusion that we cannot affirm the conviction for indecent acts or liberties with a child does not end our analysis. We now consider whether the instructions and evidence are sufficient to sustain a conviction for a lesser included offense. *See* Article 79, UCMJ. We find the evidence adduced at trial, to include appellant's own testimony, adequately supports a finding of guilty of the lesser included offense of indecent acts with another, in violation of Article 134, UCMJ.[14] Significantly, under the facts of this case, there is no element of the lesser included

---

[14] *See United States v. Backley*, 2 U.S.C.M.A. 496, 9 C.M.R. 126 (1953) (affirming the lesser included general intent offense because the military judge failed to give a voluntary intoxication instruction for the greater offense); *see generally United States v. Berri*, 30 M.J. 1169, 1174 (C.G.C.M.R. 1990) ("[T]he findings of guilty for the offenses containing a specific intent element cannot be affirmed. There is a lesser included offense . . . which may be affirmed, because a specific intent is not required for commission of that offense."); *United States v. Benton*, 7 M.J. 606, 608 (N.M.C.M.R. 1979) (finding the instructions at trial adequate to permit affirmance of a lesser included general intent offense when the court found an instructional error to the greater offense); *United States v. Riege*, 5 M.J. 938, 942 (N.M.C.M.R. 1978) (discussing alcohol induced amnesia as a defense in the context of voluntary intoxication and insanity). (*United States v. Randolph*, 5 C.M.R. 779 (A.F.B.R. 1952); *United States v. Rouillard*, 6 C.M.R. 341 (A.B.R. 1952); *United States v. Carpenter*, 5 C.M.R. 248 (A.B.R. 1952).

offense of indecent acts with another not already addressed by the military judge's instructions. *See United States v. McKinley*, 27 M.J. 78, 79 (C.M.A. 1988) (noting military appellate courts can affirm a lesser included offense "even if the lesser-included offense was neither considered nor instructed upon" at trial); *see also United States v. Miergrimado*, 66 M.J. 34 (C.A.A.F. 2008). Indeed, indecent acts with another is specifically listed as a lesser included offense of indecent acts or liberties with a child. *See MCM*, Part IV, para. 87.d.(1).

At trial, there was no question whether appellant knew AS was under the age of sixteen at the time of the offense. During appellant's own testimony, he affirmatively stated he knew on the date at issue AS was only fourteen years old. Moreover, appellant's defense counsel reaffirmed this understanding when discussing instructions with the military judge, conceding a mistake of fact as to age instruction was not reasonably raised by the evidence. In this case, the indecency of the offense was intrinsically linked to the age of the victim, AS, rather than presence of a third-party or the issue of consent. *See Strode*, 43 M.J. at 32 ("[A]ge is relevant to prove the elements that the act was indecent and service-discrediting. An act that may not be indecent between consenting adults may well be made indecent because it is between an adult and a child."); *see also United States v. French*, 31 M.J. 57, 59 (C.M.A. 1990); *United States v. Tindoll*, 16 U.S.C.M.A. 194, 195, 36 C.M.R. 350, 351 (1966). Therefore, as the panel concluded, appellant's sexual activity with AS was prejudicial to good order and discipline, service discrediting, and constituted an indecent act.[15] *See United States v. Zachary*, 61 M.J. 663, 675 (Army Ct. Crim. App. 2005), *aff'd*, 63 M.J. 438 (C.A.A.F. 2006) (affirming the lesser-included offense of indecent acts with another, in violation of Article 134, UCMJ, when the evidence raised the affirmative defense of mistake of fact for the greater offense of indecent acts with a child).

In addition to the status of the victim as a minor, appellant's conduct, to include his own testimony that he and AS kissed, occurred "in such a place and under such circumstances that it is reasonably to be seen by others even though others actually [did] not view the acts." *United States v. Izquierdo*, 51 M.J. 421, 432 (C.A.A.F. 1999) (holding it is not necessary to prove a third person was present, only that it was reasonably likely that a third person was present); *see also United States v. Rollins*, 61 M.J. 338, 344 (C.A.A.F. 2005) ("The determination of whether

---

[15] An indecent act "signifies that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations." *MCM*, Para IV, para 90.c.

an act is indecent requires examination of all the circumstances, including the age of the victim, the nature of the request, the relationship of the parties, and the location of the intended act."). The evidence introduced at trial demonstrated the Solid Rock United Methodist Church was a public location and the nursery room where the offense occurred was reasonably viewable by a third party, even if some testimony indicated the door to the nursery was locked. Consequently, such conduct was sufficiently "open and notorious." *See Zachary,* 61 M.J. at 675 (finding appellant's statements during the providence inquiry adequately support a finding of guilty to the lesser included offense of indecent acts with another, in violation of Article 134, UCMJ, since his conduct was open and notorious).

In this particular case, the age of the victim, location of the charged offense, and "open and notorious" nature of the offense were sufficient to establish the indecency of appellant's acts with AS. Simply stated, appellant's conduct was prejudicial to good order and discipline, service discrediting, and we affirm a conviction of the lesser included offense of indecent acts with another.

### *Sentence Reassessment*

In light of our decision to affirm the conviction for the lesser included offense, we reassess appellant's sentence. "[I]f the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, [then] a sentence of that severity or less will be free of the prejudicial effects of error . . . ." *United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006) (quotation marks and citation omitted); *see also United States v. Sales*, 22 M.J. 305, 307 (C.M.A. 1986). In curing the errors through reassessment, we must ensure the sentence is "equal to or no greater than a sentence that would have been imposed if there had been no error." *Moffeit*, 63 M.J. at 41 (citing *Sales*, 22 M.J. at 308); *see also United States v. Buber*, 62 M.J. 476, 477 (C.A.A.F. 2006). If we can "reliably determine what sentence would have been imposed at the trial level if the error had not occurred," we need not order a rehearing on the sentence. *Sales*, 22 M.J. at 307.

Considering the nature of the remaining findings of guilty and the sentence adjudged at trial, "we perceive no reasonable possibility of benefit to [appellant] by [sending his case back to the convening authority] for reassessment of the sentence." *United States v. Sims*, 57 M.J. 419, 422 (C.A.A.F. 2002) (citation omitted). There is no significant "change in sentencing landscape" and we can reliably reassess appellant's sentence. *Moffeit*, 63 M.J. at 43 (Baker, J., concurring). Although the maximum possible punishment has decreased by two years confinement, appellant's

offenses and the aggravating circumstances remain largely unaffected.[16] Additionally, the panel sentenced appellant to a bad-conduct discharge, confinement for five years, forfeiture of all pay and allowances, reduction to Private E1—a sentence well below the authorized maximum punishment that includes a dishonorable discharge and confinement for twenty-seven years. We are confident, therefore, the panel would have imposed a sentence of a similar magnitude had appellant been convicted of the lesser included offense of indecent acts with another at trial. Applying this analysis, and after careful consideration of the entire record, we are satisfied beyond a reasonable doubt the panel would have adjudged a sentence of no less than a bad-conduct discharge, confinement for four years and seven months, forfeiture of all pay and allowances, and reduction to E-1.

### CONCLUSION

Accordingly, the court affirms the finding of guilty for Specification 2 of the Charge to the lesser included offense of indecent acts with another, in violation of Article 134, UCMJ. The remaining findings of guilty are affirmed. We have considered appellant's remaining assignments of error and the matters personally raised by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit. Reassessing the sentence on the basis of the error noted, the entire record, and applying the principles of *Sales*, 22 M.J. at 305 and *Moffeit*, 63 M.J. at 40, 42-44, to include those principles identified by Judge Baker in his concurring opinion, the court affirms only so much of the sentence as provides for confinement for four years and seven months and the remainder of the approved sentence.

Senior Judge HOLDEN and Judge HOFFMAN concur.



FOR THE COURT:

*Mary B. Chapman*

MARY B. CHAPMAN
Deputy Clerk of Court

---

[16] *Compare MCM*, Part IV, para. 87(e) (indecent acts or liberties with a child) (The maximum punishment is: "Dishonorable discharge, forfeiture of all pay and allowances, and confinement for 7 years."), *with MCM*, Part IV, para. 90(e) (indecent acts with another) (The maximum punishment is: "Dishonorable discharge, forfeiture of all pay and allowances, and confinement for 5 years.").