# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant FRANCISCO C. LARA**
**United States Army, Appellant**

ARMY 20170025

Headquarters, I Corps
Sean Mangan, Military Judge (arraignment)
Kenneth Shahan, Military Judge (trial)
Colonel Randall J. Bagwell, Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA (argued); Lieutenant Colonel Christopher D. Carrier, JA; Captain Cody Cheek, JA (on brief); Lieutenant Colonel Christopher D. Carrier, JA (on reply brief).

For Appellee: Captain Jessika M. Newsome, JA (argued); Lieutenant Colonel Eric K. Stafford, JA; Major Hannah E. Kaufman, JA; Captain Jessika M. Newsome, JA (on brief).

27 December 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FEBBO, Judge:

Appellant's court-martial proceeded smoothly enough until, during the presentencing phase of trial, the military judge sua sponte decided to re-instruct the panel and attempted to reopen deliberations on findings. A fiasco ensued. We

intervened. *See United States v. Shahan*, 2016 CCA LEXIS 740 (Army Ct. Crim. App. 23 December 2016)[1].

The dust has settled and the case is now again before us under Article 66, UCMJ.[2] As such, we now analyze the proceedings to determine if the military judge erred in failing to instruct the panel on the voluntary intoxication defense.

## BACKGROUND

### A. *The Assault*

This case began with a training conference in Las Vegas. Appellant and other noncommissioned officers (NCOs) were approved to attend the conference. Sergeant (SGT) SR was a U.S. Army Reserve soldier newly assigned to the unit who also wanted to attend the conference. She did not, however, have a government credit card on which to charge her hotel room. Appellant did not want to give up his hotel room to share with another male soldier. Instead, appellant offered to give up one of his beds and share his room with SGT SR. Appellant was married and SGT SR was engaged to be married. Appellant and SGT SR had no prior relationship and SGT SR had no romantic interest in appellant.

One evening in Las Vegas, SGT SR, Staff Sergeant (SSG) CP, and appellant went out to have dinner, drink alcohol, and gamble. Based on the video footage from security cameras and room key cards used in appellant's hotel, there is a very specific timeline for the evening. The three soldiers went out at 1830 and returned to the hotel room around 0140. Based on the testimony of SGT SR and SSG CP, the evidence established that appellant drank approximately six shots of hard liquor and a twenty-four-ounce mixed drink. Appellant did not drink any beers. Sergeant SR drank approximately five shots, a twenty-four-ounce mixed drink, and several beers.

---

[1] This court found that Rule for Courts-Martial 924 was clear and that deliberations could not be reopened after announcement of findings in open court. We issued a writ of prohibition and returned the record of trial to the military judge. The military judge denied the appellant's motion for a mistrial and resumed presentencing proceedings.

[2] Contrary to his pleas, before a panel with enlisted representation, appellant was convicted of one specification of sexual assault, in violation of Article 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920 (2012). The convening authority approved appellant's adjudged sentence of a dishonorable discharge, hard labor without confinement for thirty days, and reduction to the grade of E-1.

When SGT SR and appellant returned to the room, appellant slept on the bed and SGT SR slept on the floor. She wanted to stop "the room from spinning." At around 0300, SGT SR woke up with appellant behind her on the floor. He was inserting his finger in and out of her vagina. Sergeant SR objected and immediately left the room. Sergeant SR reported the sexual assault to hotel security. She also reported the sexual assault to the NCOIC of the group attending the conference.

Around 0530, after making a written report to hotel security, SGT SR made her own arrangements to fly out of Las Vegas and returned home. Her commander took her to the hospital for a sexual assault medical forensic exam. After the assault, appellant told another soldier that he was lying on his bed when SGT SR woke-up, started yelling, and he "didn't know why or what happened." Appellant texted another NCO and stated he was "all sorts of fucked up."

### B. The Opposing Theories at Trial

At trial, the government's theory was that SGT SR was drinking alcohol and was drunk earlier in the night. The government argued that at the time of the sexual assault, the appellant knew or should have known SGT SR was asleep, unconscious, or otherwise unaware. However, she was not blacked out and was awakened by appellant's penetrating her vagina with his finger. Sergeant SR testified appellant was moving his finger in and out of her vagina.

The government presented testimony from other witnesses that SGT SR contacted after the assault. Although she was initially crying heavily after the assault, the government presented evidence that she could clearly recall all the details of the assault. Security guards testified that SGT SR did not appear to be intoxicated when they interacted with her and she completed the written report. Sergeant SR was a very credible witness.

The strongest evidence of appellant's voluntary intoxication was offered by the government, not the defense. At the same time, the government presented evidence that appellant was not so severely intoxicated that he was incapable of forming the specific intent for the sexual act. Video evidence was introduced showing appellant walking back to his room around 0142. Appellant was not stumbling and appeared cognizant of his surroundings. Another guard testified that appellant had red, glassy eyes but did not sway and was able to understand all the guard's directions.

The prosecution offered into evidence a form appellant signed when he was asked to leave the hotel. The prosecution offered the form under the theory that it demonstrated appellant was able to follow instructions and fill out documents in "a neat and orderly way" shortly after the assault. The government explained this "goes to show his ability to formulate intent." Appellant objected to the admission

of the form on relevancy grounds.[3]  The military judge sustained the defense objection to the admission of the form under Military Rule of Evidence 403.

Around 0500, because appellant had to move to another hotel, one of the NCO's gave appellant the keys to the rental car to drive to the new hotel.  Several hours later, appellant went to breakfast with the other NCOs and then attended the conference.

The defense theory was that the sexual assault never occurred and SGT SR was creating false memories based on an alcohol induced blackout.  The defense argued that SGT SR was extremely drunk, had a faulty memory, and could not credibly remember what happened in the room.  The defense counsel pointed out inconsistencies in SGT SR's statements after the assault.  The defense highlighted the lack of DNA or other physical evidence to corroborate SGT SR's testimony.  A defense expert testified that alcohol affects memory and SGT SR could have been blacked out at the time she was in the room.[4]  Therefore, the defense focused on evidence tending to maximize SGT SR's level of intoxication.

At the same time, the defense also minimized any evidence of appellant's intoxication.  The defense counsel never argued about appellant's level of intoxication during opening or closing on the merits.  Through cross-examination, the defense counsel elicited testimony from a security guard that when she went to appellant's room shortly after the assault, appellant was cooperative and respectful.

### C. Instructions and Voluntary Intoxication

The military judge discussed proposed instructions on findings with trial and defense counsel.  The trial counsel suggested an instruction on an Article 128, UCMJ, offense in case the panel found appellant lacked specific intent due to intoxication.  The defense objected to any Article 128, UCMJ, instruction and the military judge agreed.  The defense counsel did not request a voluntary intoxication instruction.  The defense counsel explicitly agreed it was not appropriate to give the panel a mistake of fact instruction on whether appellant was aware SGT SR was

---

[3]  The government argued this line of questioning was relevant because the government had to establish appellant had the specific intent and "it's a conceivable defense theory that the accused is so intoxicated, he is unable to formulate intent."

[4]  Appellant offered expert testimony that an average person processes one drink of alcohol an hour.  Applying that formula to the Las Vegas evening, an average person would have metabolized approximately seven drinks between 1830 and 0140.

asleep. The defense counsel agreed a mistake of fact instruction was not raised by the evidence. The military judge discussed special defenses and stated he did not think any "actual legal defenses" were raised by the evidence. The defense counsel did not object to the proposed instructions and agreed with the military judge that no instructions on special defenses were raised by the evidence.

The military judge instructed the panel and again asked if the parties had any objections to the instructions. Neither the government nor defense counsel objected or requested additional instructions.

During deliberations, the panel had one question: "If the assailant of sexual assault is unaware of what he or she is doing, is the incident still considered a wrongful offense?" The military judge and counsel discussed the response to the question. The military judge suggested re-reading the definition of a sexual act and that an accused had to have the intent to abuse, humiliate, harass, or degrade any person or to arouse and gratify the sexual desires of any person. The military judge asked counsel if they agreed and whether any other explanation was necessary or appropriate. Both counsel agreed with the response to the panel's question and both counsel responded that no further explanation was necessary or appropriate.

The military judge answered the panel's question by repeating the definition of "sexual act." After repeating the definition of "sexual act," the military judge further addressed the members as follows: "So, in other words there is an intent requirement embedded in that definition [of 'sexual act']. Does everybody understand that?" All the members answered affirmatively. The military judge then asked the panel president: "Does that answer your question?" The president responded that it did answer the panel's question.

Appellant was found guilty of one specification of sexual assault for penetrating SGT SR's vulva with his finger when appellant knew or reasonably should have known she was asleep, unconscious, or otherwise unaware that the sexual act was occurring.

*D. Appellant's Unsworn Statement During Sentencing*

During the sentencing phase of trial, appellant made an unsworn statement in the form of questions and answers from his defense counsel. Appellant explained to the panel that he considered testifying in his own defense on the merits. He did not, however, because he drank so much alcohol, he did not have memories of the night. Appellant explained he would only have been able to testify that he could not remember anything.

He was surprised by SGT SR's testimony and apologized for hurting her. According to appellant, however, he did not have enough memory to state if the

assault actually occurred. At the same time, he could say he never intended anything to have happened and any actions were out of character. Appellant explained he is not a big drinker and had never drank that much in his life.

After the appellant's unsworn statement, the defense rested. The court recessed for the evening and scheduled deliberations for the next morning.

*E. The Military Judge Attempts to Reopen Findings*

The next morning, the military judge informed the government and defense counsel that he should have given an instruction on voluntary intoxication. In his opinion, he committed "plain error."[5] The military judge gave the defense counsel two options. First, appellant could request a mistrial. The second option was for the military judge to reinstruct the panel on voluntary intoxication and have them return for deliberations on findings. Defense counsel chose reinstructing the panel and new deliberations on findings.

The military judge further stated a mistrial was not warranted. The military judge stated that the defense theory was not that appellant lacked the requisite specific intent to commit the offense. Instead, the defense was that appellant never committed the physical acts alleged and that SGT SR had false memories from an alcohol-induced blackout. The military judge stated it was highly unlikely the panel would find appellant penetrated SGT SR's vulva with his fingers without the intent to abuse, humiliate, harass, or degrade SGT SR or to arouse or gratify the sexual desires of any person. However, the military judge wanted to reinstruct them on voluntary intoxication to resolve any questions the panel had about appellant's intoxication.

The government objected and argued that the defense theory had never been that appellant was incapable of forming intent. Only during his unsworn statement after findings, did appellant explain why he did not testify and informed that panel that he could not remember any part of the evening due to alcohol. The government also argued that the defense waived the voluntary intoxication instruction during the

---

[5] The military judge later came to the opposite conclusion and stated he did not commit "plain error." The military judge reasoned he would have given the instruction as a "matter of caution," but the instruction was not triggered as a "matter of law" by the evidence. These confusing and contradictory conclusions highlight the fact that trial judges should not conduct their own appellate-style review of their rulings. Whether plain error occurred is determined by appellate courts. A military judge may reconsider his or her prior rulings in a case, but does not apply appellate standards of review when doing so.

discussions with the defense counsel about appellant's level of intoxication and the discussions about instructions during Rule for Courts-Martial (R.C.M.) 802 sessions.

Since the panel had already announced findings in open session and the military judge's second course of action violated R.C.M. 924, the government counsel filed a petition with this court seeking a writ of prohibition against the military judge reopening findings. The government asked for a few hours recess to determine if this court was going to grant a stay. The military judge denied the request for a recess and reinstructed the panel on voluntary intoxication.

The military judge offered the defense counsel the opportunity to reargue voluntary intoxication but they decided to not argue the issue. The military judge understood the decision of the defense not to reargue voluntary instruction because it would completely contradict the theory of their case-in-chief. The military judge also informed the government he would not allow them to argue against the voluntary intoxication defense. The military judge prohibited the government argument since "the government could have basically driven a nail in the coffin of that defense."

Approximately ten minutes after the military judge denied the government's request for a recess, this court issued a stay. After oral argument on the writ of prohibition, this court ruled that R.C.M. 924 prohibited reopening deliberations after announcement of the findings in open session. We therefore issued a writ of prohibition against the military judge reopening the findings. Appellant's court-martial continued with the presentencing phase of trial.

## LAW AND DISCUSSION

Appellant's sole assignment of error argues the military judge committed plain error by not sua sponte instructing the panel on voluntary intoxication as it related to appellant's ability to form specific intent.

### A. The Special Defense of Voluntary Intoxication

Although not listed as a special defense under R.C.M. 916, military courts have treated voluntary intoxication as a special defense applicable to offenses requiring specific intent or knowledge of a fact that voluntary intoxication would negate. *See United States v. Hearn*, 66 M.J. 770, 776 (Army Ct. Crim. App. 2008) (citing *United States v. Watford*, 32 M.J. 176, 178 (C.M.A. 1991). In other words, if an individual is so thoroughly inebriated that he or she literally does not know what he or she is doing, the individual's intoxicated state might be a defense to certain criminal charges.

A military judge has a duty to instruct members on any special defenses placed "in issue." *United States v. Stanley*, 71 M.J. 60, 61 (C.A.A.F. 2012); R.C.M.

920(e)(3). A matter is "in issue" when some evidence, upon which the members might rely if they chose, raises that matter, without regard to its source or credibility. *United States v. Lewis*, 65 M.J. 85, 87 (C.A.A.F. 2007); *United States v. Watford*, 32 M.J. 176, 178 (C.M.A. 1991). This does not, however, mean that every accused who consumed alcohol prior to committing a specific intent crime is entitled to a panel instruction on voluntary intoxication. *See Watford*. 32 M.J. at 178-79.

As might be expected, ordinary drunkenness typically does not rise to the level of depriving an individual of his or her basic knowledge of reality or prevent that individual from forming intent. "[E]vidence that an accused consumed intoxicants, standing alone, is insufficient to require a voluntary intoxication instruction." *Hearn*, 66 M.J. at 777 (citing *Watford*, 32 M.J. at 179).

"When raising an issue of voluntary intoxication as a defense to a specific-intent offense, 'there must be some evidence that the intoxication *was of a severity to have had the effect of rendering the appellant incapable of forming the necessary intent*,' not just evidence of mere intoxication." *United States v. Peterson*, 47 M.J. 231, 233-34 (C.A.A.F. 1997) (quoting *United States v. Box*, 28 M.J. 587, 585 (A.C.M.R. 1989) (emphasis added)).

This court has previously adopted a three-pronged test for whether "some evidence" has been admitted of intoxication sufficiently severe as to deprive an individual of the ability to form intent: "(1) the crime charged includes a mental state; (2) there is [evidence of impairment due to the ingestion of alcohol or drugs]; and (3) there is evidence that the [impairment] affected the defendant's ability to form the requisite intent or mental state." *Hearn*, 66 M.J. at 777 (quoting *State v. Kruger*, 685, 67 P.3d 1147, 1149 (Wis. Ct. App. 2003)) (alterations original to *Hearn*).

We do not interpret the rule we adopted in *Hearn* as lowering the threshold our superior court articulated in *Peterson*. *Hearn's* requirement of evidence that impairment "affected the defendant's ability to form the requisite intent or mental state," must be read in light of *Peterson's* requirement for evidence that any "intoxication was of a severity to have had the effect of rendering the appellant incapable of forming the necessary intent." We do not purport to lower the evidentiary thresholds established by our superior court.

### B. Plain Error Analysis

"'Whether a panel was properly instructed is a question of law' we review *de novo.*" *United States v. Mott*, 72 M.J. 319, 325 (C.A.A.F. 2013) (quoting *United States v. Garner*, 71 M.J. 430, 432 (C.A.A.F. 2013)). "Failure to object to an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error." R.C.M. 920(f). In order to warrant reversal

as plain error, appellant "has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the [appellant]." *Mott*, 72 M.J. at 325 (quoting *United States v. Payne*, 73 M.J. 19, 23 (C.A.A.F. 2014)). "[F]ailure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).[6]

### 1. Error

The first prong of the *Hearn* test is satisfied because the charge of sexual assault included a specific *mens rea*. The second prong of *Hearn* is satisfied because there is also some evidence appellant was impaired due to alcohol. Appellant consumed alcohol that evening in Las Vegas. The question of error then turns on the third prong of *Hearn*, namely, whether there is "some evidence" that appellant was not just impaired, but so impaired that he could not form specific intent. See *Hearn*, 66 M.J. at 777.

The best evidence to support appellant's claim was the testimony of a soldier who stated that after the assault, SGT SR told him that appellant "didn't realize what he was doing at that time." Whether this speculative, second-hand statement—in the context of the testimony about appellant's alcohol consumption—is enough to support an instruction on voluntary intoxication is a close question. We need not resolve that close question in this case. Even assuming the military judge committed error by not instructing the panel on voluntary intoxication, such error was not plain and obvious, and no such error materially prejudiced appellant's substantial rights. We discuss these second and third prongs of plain error review below.

---

[6] As the appellant did not object to the lack of any instructions on special defenses and did not request any instructions on special defenses, we apply plain error analysis to the military judge's instructions in this case. *See United States v. Guardado*, 77 M.J. 90, 93 (C.A.A.F. 2017). We note, however, there is a strong argument appellant's counsel affirmatively waived any instruction on voluntary intoxication because: (1) the defense counsel informed the military judge they agreed no instructions on defenses were warranted; and (2) when the panel asked a question about appellant's *mens rea*, the defense counsel informed the military judge they did not request any additional instructions and explicitly agreed to the military judge repeating the definition of a "sexual act" to the panel. An instruction suggesting there was evidence that even if appellant committed the charged acts it was without the requisite specific intent would have been inconsistent with appellant's theory of the case. Appellant's theory was that he never committed the physical acts SGT SR claimed he did.

*2. No Error was Plain or Obvious*

Assuming the balance of the evidence before the military judge crossed the threshold of "some evidence" that appellant was so intoxicated he could not form the specific intent to arouse or gratify his sexual desire, it was neither plain nor obvious that threshold had been crossed. It is significant, though not dispositive, that appellant did not request such an instruction, even when the military judge specifically asked about instructions on special defenses. The defense counsel did not discuss appellant's level of intoxication during opening or closing statements. During the government and defense cases-in-chief, defense counsel did not present evidence of appellant's intoxication. Defense counsel did not place appellant's state of mind at issue or argue appellant's lack of ability to form specific intent. To the contrary, defense counsel minimized his level of intoxication and objected to introduction of some government evidence that would potentially support appellant's lack of intoxication. During the motion for a mistrial, the civilian defense counsel stated he could not point to any testimony directly on point that appellant was so intoxicated that he could not form specific intent.

At the time of instructing the panel on findings, the balance of the evidence pointed to the conclusion that appellant was lucid and competent at the time of the charged misconduct. Under these circumstances, we simply cannot say it was plain or obvious the military judge should have given an instruction on a special defense that was contrary to appellant's theory of the case and the weight of the evidence presented. Had the appellant testified on the merits in his own defense to the same facts he offered in his presentencing unsworn statement, it would have been proper for the military judge to consider his testimony for the question of whether the voluntary intoxication instruction was required. We evaluate the military judge's instructions on findings, however, in light of the evidence before the military judge at the time the instructions are given, not in light of evidence later offered for presentencing purposes.

*3. No Error Materially Prejudiced Appellant's Substantial Rights*

We also conclude the omission of any instruction on voluntary intoxication did not materially prejudice appellant's substantial rights. There was ample evidence in the record that would have negated the voluntary intoxication defense, had it been raised. The videos of appellant walking to the hotel room did not show him to be obviously impaired. When appellant and SGT SR got to the hotel room, they both prepared to go to sleep and SGT SR testified he did not appear visibly intoxicated. In order to sexually assault SGT SR, appellant had to leave his bed, get behind SGT SR on the floor, and place his hand under her shorts and insert his finger in and out of in her vagina.

Very shortly after the assault, appellant was sending grammatically correct texts to other soldiers explaining what happened or did not happen in the room. Appellant also interacted with several hotel security guards that observed he was not intoxicated. They described him as cooperative and respectful and testified he understood their instructions. A fellow NCO gave appellant the keys to a rental car for him to drive to another hotel. The NCO was not concerned that appellant was too impaired by alcohol to operate the vehicle. Appellant drove to the other hotel and checked-in. Appellant went to breakfast early the next morning with the other NCOs and attended the conference.

The totality of the evidence offered on the merits was such that any reasonable factfinder would have concluded appellant was capable of forming specific intent at the time of the assault. Thus, even if the military judge had instructed the panel on voluntary intoxication, it would have made no difference to the outcome of appellant's court-martial.

## CONCLUSION

The findings and sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

11