# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, PENLAND, and MORRIS
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist TATEM T. RESUTEK**
**United States Army, Appellant**

ARMY 20220431

Headquarters, Fort Liberty
J. Harper Cook, Military Judge
Colonel Joseph B. Mackey, Staff Judge Advocate

For Appellant: Major Robert W. Rodriguez, JA; Captain Rachel M. Rose, JA (on brief); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert W. Rodriguez, JA; Captain Rachel M. Rose, JA (on brief on specified issue); Major Robert W. Rodriguez, JA (Motion for Reconsideration).

For Appellee: Colonel Christopher B. Burgess, JA; Major Timothy R. Emmons, JA (on brief on specified issue); Colonel Richard A. Gorini, JA; Captain Anthony J. Scarpati, JA (Response to Motion for Reconsideration).

17 January 2025

------------------------------------------------------------------
MEMORANDUM OPINION ON RECONSIDERATION
------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MORRIS, Judge:

"Appellant submitted the case upon its merits. And some merit it does possess." *United States v. Adams*, 74 M.J. 589, 590 (Army Ct. Crim. App. 2015). We directed the parties to brief whether appellant had set up matters inconsistent with his guilty pleas. Considering the entire record, we answer "yes" for all but the findings of guilty for a wrongful marijuana use and worthless check offenses. We provide appropriate relief in our decretal paragraph.

## BACKGROUND

Consistent with appellant's pleas, a military judge convicted him of one specification of desertion, one specification of failure to go to his appointed place of

duty, one specification of absence without leave, one specification of failure to obey a lawful order, one specification of wrongfully using marijuana, and three specifications of fraudulently making worthless checks in violation of Articles 85, 86, 92, 112a, and 123a, Uniform Code of Military Justice, 10 U.S.C. §§ 885, 886, 892, 912a, and 923a [UCMJ].[1] In accordance with a plea agreement, the military judge sentenced appellant to a bad-conduct discharge, confinement for 185 days, and reduction to the grade of E-1; appellant received 187 days of confinement credit.

This court issued a memorandum opinion in this case on 28 October 2024. *United States v. Resutek*, ARMY 20220431, 2024 CCA LEXIS 459 (Army Ct. Crim. App. 28 Oct. 2024) (mem. op). On 27 November 2024, appellant requested this court reconsider whether the appellant's providence inquiry sufficiently established his specific intent element for the fraudulently making worthless checks offenses. Having considered both parties arguments on the issue, we affirm our earlier decision with some additional analysis.

The earliest misconduct for which appellant was convicted began on or about 25 March 2021 (worthless checks); the latest misconduct began around 23 May 2021 (desertion). In other words, approximately two months elapsed from the earliest start date to the latest start date. Appellant's misconduct concluded when his period of desertion was terminated on 23 March 2022.

Appellant's *Care*[2] inquiry began with the failure to go specifications. Appellant stated that on 9 April 2021, he was released from civilian confinement in Booneville, Mississippi, after being arrested for unrelated drug misconduct. Instead of returning to his unit as directed by his commander, he drove a close friend, who later became his fiancée, home to take care of her. Appellant told the military judge, "she was in an abusive relationship, sir. And her father had asked me to take care of her. I decided, the best way to do that was to disobey that order and to take her back home." When the military judge asked if he had any "justification or excuse" for this offense, appellant responded, "No, sir." The discussion continued:

---

[1] Pursuant to the plea agreement, the convening authority, after arraignment but prior to findings, withdrew and dismissed one specification of absent without leave, one specification of escape from correctional custody, one specification of wrongful possession of cocaine, one specification of wrongful use of cocaine, one specification of wrongful use of a controlled substance, two specifications of larceny, four specifications of fraudulently making worthless checks, two specifications of domestic violence, one specification of extramarital sexual conduct, and one specification of a federally assimilated offense in violation of Articles 86, 87a, 112a, 121, 123a, 128b, and 134, UCMJ.

[2] *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

MJ: All right. You mentioned something about [your friend] being in some kind of abusive relationship. And I think you also told me that you chose to violate the order. Do you believe that gave you any justification or excuse to fail to go to your appointed place of duty?

ACC: As a Soldier, I had a duty to listen to my command, no. As a person that was worried about her wellbeing and her safety, I do.

MJ: All right, so can I take from that you don't believe you had a legal justification?

ACC: I did not have a legal justification.

MJ: Let me ask you this. Was it a mistake or a choice on your part not to come back to Fort Bragg that day?

ACC: It was certainly a mistake. But I decided not to.

MJ: Here's what I mean by mistake. By mistake, I mean an accident.

ACC: No, sir.

. . . .

MJ: Did you make a choice not to come back?

ACC: Knowing and willingly.

. . . .

MJ: A knowing and willing choice. Is that what you just said?

ACC: Yes, sir.

MJ: Let me ask you this. If you believe that someone was in danger, [your friend] needed you, there were some other higher moral calling, could you have communicated that to the command?

ACC: Yes, sir, I could have.

MJ: Did you do so?

ACC: I did not.

Appellant then discussed his unauthorized absence (ranging approximately three weeks), which began with his failure to go offense. He again described the situation regarding his friend, adding that he was "pretty terrified at the time of what to do."

MJ: Okay. I asked you some questions on the [failure to go] specification about any justification or excuse. You explained very forthrightly to me that you believed there might have been, as a human or a person, some higher calling to help [your friend] out. But do you believe that rises to a level of any legal justification or excuse for being absent without leave as charged?

ACC: No, sir, I do not.

MJ: Okay. All right. Stated another way, was it a choice on your, your part to remain absent? Was it, was it a choice on your part?

ACC: It was, sir, yes, sir.

MJ: Is that a fair choice of words?

ACC: Yes, sir.

MJ: Fair choice? Okay. Could you, if you had wanted to, sought to get leave from Lieutenant Wilson or some other authority with leave, and explain the situation you were in down there with [your friend]? Could you have done that if you had wanted to?

ACC: I could have, sir.

MJ: And did you do so?

ACC: No, sir.

Turning to the Article 92 offense, appellant explained that his commander ordered him to remain on post after his return from the earlier unauthorized absence. Appellant forthrightly told the military judge he failed to obey that order by leaving post.

Appellant then discussed the charged desertion:

ACC: [W]ith this charge, I regrettably say that it was because I was so distraught and so mentally unwell with everything that had occurred previously. I knew my career was over, I was already in a process of

4

getting moved out of the military . . . . I couldn't face myself at that time, sir. I was terrified of what would happen to me as a former [military police officer] in confinement. What was going to happen with all these serious criminal allegations against me? When I left, I had zero intention on coming back . . . . I had no intention on even living, probably till the end of the year. I was so unwell. From the beginning, I never should have left. But I didn't reach out to anybody with legal services. I was, I was terrified, sir.

MJ: I heard the sincerity in your voice. What the, the big themes I heard from you explaining things to me was that -- and push back if this is incorrect, that you were scared, in despair, felt like you had no other choice. I took from some there that, that you may have been -- had suicidal thoughts. That you couldn't face yourself. Is that all a fair summary of the feelings you told me about?

ACC: Yes, sir.

MJ: Do you believe -- and I, I don't -- by asking this question, I'm not trying to demean your feelings. But I have to, I have to be direct. Do you believe that any of those things you told me rise to the level of legal justification or excuse for deserting your unit as charged?

ACC: Absolutely not, sir.

MJ: Okay. If I find you guilty, you're . . . free to testify about all matters and extenuation and mitigation, if we should reach sentencing. So, if we reach -- if I find you guilty, you're, you're free to tell me all, all about those things, in mitigation. And I'll be happy to hear that as your sentencing authority. But I'll . . . take from your answer there that you're not trying to say that what you did was justified. Is that correct?

ACC: No, sir, it was not.

MJ: Did you say it was not justified?

ACC: It was not justified.

Turning to the worthless checks offenses, appellant spoke of them collectively at first:

ACC: It was, it was a dishonest act. It, it wasn't true. I, I didn't have that money. I misrepresented that check . . . . I was – all, all this is

5

> overshadowed by my financial troubles that I was having at the time, and my addiction to alcohol.
>
> And that is also why I have to rely on review of the evidence. That's my signature, it was my [Common Access Card] that was given. But I couldn't – I can't tell you what I spent the money on. I can't tell you what I got for the goods for The Specification 6 [*sic*]. But after the review, that's what I did, sir.

Appellant did, however, tell the military judge that, based on his review of the evidence, he wrote the checks with the intent to defraud, knowing he would have insufficient funds in his account to cover the checks.

The providence inquiry next turned to appellant's marijuana use. Appellant explained that he smoked marijuana multiple times within the date range charged, that he was previously familiar with the smell and effects of marijuana use, and that he had smoked marijuana, knowing that its use was prohibited by the UCMJ. Notably absent from appellant's discussion with the military judge was the presence of any fear or external force that otherwise compelled appellant to use marijuana.

The military judge subsequently re-opened the providence inquiry to discuss voluntary intoxication in the context of the worthless check offenses:

> MJ: Before I get to the plea agreement itself . . . I want to go ahead and . . . reopen providence about these three bad check offenses. Now you told me . . . you led me to believe that around the time of these three bad checks . . . you're alcohol addicted or your memory was hazy, because you're using a lot of alcohol or words to that effect . . . . So, whenever I hear of alcohol use of alcohol addiction, or intoxication around the time of . . . an offense, and if an offense has a specific intent, or specific knowledge requirement, I'm frankly required to . . . have an additional colloquy about voluntary intoxication . . . . I gave . . . your counsel, a copy of the colloquy I'm going to have, and again, if you need a break to step out and talk to him more, I'll be happy to grant it, okay?
>
> ACC: Yes, sir.
>
> MJ: I advised you earlier that one of the element[s] . . . is that at the time of making of each check, you knew that as the maker of each check you did not or would not have sufficient funds in or credit with the United States Bank for the payment of said check in full upon its presentment. And the key word in all of that is . . . knowledge. Do you understand that?

ACC: Yes, sir.

MJ: And what this instruction is getting at . . . is . . . if evidence were presented at . . . trial that you were intoxicated or addicted to alcohol, that could cause the members to have reasonable doubt about that element.

After explaining the voluntary intoxication instruction he would give members in a panel case, the military judge continued:

MJ: All right. So, the bottom line is, do you believe voluntary intoxication to apply to your case with regard to those three offenses?

ACC: No, sir. My intoxication is absolutely voluntary. I am a recovering alcoholic. I've been in treatment through the Army. At that time, I was still going through that treatment. But I was, I was failing that. I would still drink, I just could not stop drinking. But my daily use didn't mean that I was completely wasted or blacked out during that time. After reviewing the evidence, and trying my best to remember, there is no reason to why my drinking would have made it to where I didn't know the act was wrong. Or what I was doing when I was writing a check. And there's still nothing that would have kept me from knowing, in my bank account, especially if I'm paid only twice a month, that I had no money.

MJ: The -- there's two bottom lines here. Are you satisfied of your guilt for these three bad check offenses, knowing everything I've told you about those offenses and the definitions and this potential defense of voluntary intoxication?

ACC: Yes, sir.

The military judge ultimately found appellant guilty in accordance with the agreement.[3] Appellant's subsequent presentencing testimony did not include any information inconsistent with his guilty pleas. The military judge admitted during sentencing, among other things, a sixteen-page handwritten letter from appellant to the court-martial. The letter contained additional references to alcoholism and mental illness:

---

[3] Pursuant to the terms of the plea agreement, appellant and the government entered into a stipulation of fact that was admitted into evidence prior to the providence inquiry. The stipulation addressed the basic elements for all of the offenses to which appellant pled guilty but said nothing about potential defenses.

Last year [2021], I was a puppet controlled by my addiction to alcohol. By no means does that reality overshadow the hard truth of my actions and decision that have not only thrown my own life into chaos but also the lives of those I love. The truth being that I . . . committed dishonorable and dishonest crimes of which I knew were wrong . . . . I do not want to be that horrible person I used to find in the mirror. That person is a terrifying stranger and the clarity granted to [me through] sobriety has reminded me that I am not who I can and [need] to be when under the influence of drugs and alcohol. [That] simply wasn't the real me as I was quite literally losing my mind[.] I made irrational decisions . . . I normally wouldn't make if I was sober. . . . I suffer from severe clinical depression and my days can be really high or [really] low and during my life in March to May of 2021, I [was] within one of the lowest points of my existence. I didn't want to live and I was recovering from an attempted suicide during that winter prior in 2020. . . . Fault always lies in the same place: with him weak enough to lay blame. I singlehandedly ruined my life, but when I was making the decisions to be dishonest with leave; misrepresenting checks; disobeying my orders; and abandoning my family and duties; I had excuses by the thousands but not a single reason. I was high and drunk on my own cowardice, all the while feeling like a victim for finding myself in a mess that I denied was of my own creation. I had become a product of pure insanity. I was doing the same thing and expecting, or even worse not wanting something different to happen. [Describing goals in the next ten years] I will never forget my past nor succumb to my old ways. I will not be a sane man practicing insanity. No, not me. [I] will rise far above that.

The military judge did not reopen the providence inquiry based on appellant's letter, nor did either party ask to do so.

## LAW AND DISCUSSION

"Before accepting a guilty plea, a military judge must ensure that there is a factual basis for the accused's plea." *United States v. Mortalla*, 82 M.J. 1, 3 (C.A.A.F. 2021) (citing *Care*, 18 C.M.A. at 541). "A factual predicate [for a plea of guilty] is sufficiently established if 'the factual circumstances as revealed by the accused himself objectively support that plea." *Id.* (quoting *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996)) (additions in original).

A military judge's decision to accept a plea of guilty is reviewed for an abuse of discretion. *United States v. Byunggu Kim*, 83 M.J. 235, 238 (C.A.A.F. 2023) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). Under this

standard, the court "must uphold a guilty plea unless there is 'a substantial basis in law and fact for questioning the plea.'" *United States v. Hiser*, 82 M.J. 60, 64 (C.A.A.F. 2022) (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). Under the "substantial basis" test, the court must ask "whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Mortalla*, 82 M.J. at 3-4 (citing *Inabinette*, 66 M.J. at 322). "If an accused sets up matter[s] inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *Id.* at 4 (internal quotations and citations omitted).

An affirmative defense constitutes a matter "inconsistent with the plea" of guilty and therefore "the military judge must either resolve the apparent inconsistency or reject the plea." *E.g., United States v. Phillippe*, 63 M.J. 307, 309 (C.A.A.F. 2006); *see also United States v. Logan*, 22 U.S.C.M.A. 349, 350 (1973) (noting that "the plea must be set aside if the accused's testimony reasonably raised the question of a defense."). Even then, "a reviewing court may grant relief only if it finds that the military judge's error in accepting the plea 'materially prejudice[d] the rights of the accused.'" *Id.* (citing UCMJ, art. 45(c)).

"It is an affirmative defense in a trial by court-martial that, at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of the acts." UCMJ, art. 50a(a). If 'there is reason to believe that the accused lacked mental responsibility for any offense charged' . . . the military judge . . . has the independent responsibility to inquire into the accused's mental condition." *United States v. Riddle*, 67 M.J. 335, 338 (C.A.A.F. 2009) (quoting R.C.M. 916(b)(2)). "An accused cannot 'make an informed plea without knowledge that he suffered a severe mental disease or defect at the time of the offense'" and the legal ramifications of that disease or defect on the issue of his legal liability. *Id.* (quoting *United States v. Harris*, 61 M.J. 391, 398 (C.A.A.F. 2005)). "Similarly, the military judge cannot conduct the necessary providence inquiry into the accused's pleas 'without exploring the impact of any potential mental health issues on those pleas.'" *Id.* Where statements or materials indicate a disease or defect that may conflict with the plea, the military judge is required to inquire further. *Id.* When mental health concerns raise the "mere possibility of conflict," it is prudent, though not always required, for the military judge to conduct further inquiry. *Id.* at 338-39.

It is also a defense "that the accused's participation in the offense was caused by a reasonable apprehension that the accused or another innocent person would be immediately killed or would immediately suffer serious bodily injury if the accused did not commit the act." Rule for Courts-Martial [R.C.M.] 916(h). The defense can be applied so long as the intended victim is near the source of the threatening harm, even if the timeliness of the harm is unspecified. *See United States v. Le*, 59 M.J.

859, 865 (Army Ct. Crim. App. 2004) (finding that appellant raised the issue of duress when in the vicinity of gang members who intended to harm him, despite not knowing if or when the harm would occur). The crucial determination, then, is whether appellant "is the victim of a threat that a person of reasonable moral strength could not fairly be expected to resist." *United States v. Hayes*, 70 M.J. 454, 461 (C.A.A.F. 2012) (internal citations and quotations omitted).

"[M]ilitary courts have treated voluntary intoxication as a special defense applicable to offenses requiring specific intent or knowledge of a fact that voluntary intoxication would negate." *United States v. Lara*, ARMY 20170025, 2018 CCA LEXIS 604, at *12 (Army Ct. Crim. App. 27 Dec. 2018) (mem. op.); *see also United States v. Hearn*, 66 M.J. 770, 776 (Army Ct. Crim. App. 2008).[4]

We recognize appellant's apparently sincere effort to convince the military judge he was guilty of the offenses he offered to plead to. We also acknowledge the possibility that, at one or more intervals between 25 March 2021 and 23 May 2021 (perhaps even the entire time), appellant might have been mentally responsible, free from duress, free from the impairment of voluntary intoxication, or any combination of these things.

The providence inquiry for the absence offenses, order violation, and desertion specifications were littered with statements indicating appellant was under the effects of significant mental stressors at the time he engaged in some or all of the charged misconduct, or he felt compelled to engage in misconduct out of an obligation to protect his friend. For instance, the military judge did not inquire further when appellant stated "I had no intention on even living" and was "so mentally unwell," beyond clarifying appellant felt like he had no choice but to desert his unit. Similarly, the military judge's inquiry on duress was largely limited to exploring whether appellant could have requested leave from his acting commander. This discussion, considering the threat to appellant's friend as articulated by appellant, was insufficient to disclaim the defense of duress and was therefore error.

When appellant raised the issue of intoxication in relation to his worthless check offenses, however, the military judge instructed appellant regarding the defense of voluntary intoxication and conducted an inquiry with him. On this topic, we commend the military judge's effort to speak in terms understandable to a layperson but find the discussion, as discussed below, was barely sufficient and not comprehensive.

---

[4] While voluntary intoxication is not listed as a defense in R.C.M. 916, we describe it as a "defense," to capture the legal and functional significance of its application.

The military judge appropriately questioned whether appellant knew he had insufficient funds for the payment of the checks, given the evidence in the record of appellant's intoxication.[5] In response to this prompting, appellant admitted his intoxication was voluntary and nothing kept him "from knowing, in [his] bank account, especially if . . . paid only twice a month, that he had no money." While it would have been helpful for the military judge to further clarify appellant's intent in writing the checks, and his understanding of the voluntary intoxication defense, appellant's response serves to squelch any substantial basis on the record to now question his plea. Appellant stated his intoxication did not prevent him from knowing his acts were wrong and what he "was doing when [he] was writing a check." Thus, these statements from appellant establish the knowledge element—that he knew his acts were wrong—and the specific intent element—he knew what he was doing, which was intending to obtain something of value by writing a check that misrepresented the fact that he had the funds to cover it, when he did not.[6]

Further, during the providence inquiry, appellant affirmed he had "review[ed] the evidence" supporting all three specifications.[7] His statements included: (1) verifying his signature existed on the checks; (2) certifying the checks originated from the bank he used; and (3) acknowledging his common access card was used

---

[5] The offense of fraudulently making worthless checks is committed when: (1) "the accused made to [another] a check drawn upon [a bank, for a certain amount]; (2) "that the accused did so for the purpose of procuring an article or thing of value"; (3) "that the accused committed the act with intent to defraud; and" (4) "[t]hat at the time of the making of the instrument, the accused knew that he did not or would not have sufficient funds in the bank for the payment thereof in full upon its presentment." UCMJ art. 123a.

[6] In this situation any alleged mental health defense by appellant was in direct correlation to his intoxication status and addressed by his responses.

[7] As to any hazy memory regarding appellant and his Article 123a, UCMJ offenses, the discussion to R.C.M. 910(e) explains:

> [t]he accused need not describe from personal recollection all the circumstances necessary to establish a factual basis for the plea . . . . [A]n accused may be unable to recall certain events in an offense, but may still be able to adequately describe the offense based on witness statements or similar sources which the accused believes to be true.

"[T]he inability of an accused to recall the facts relating to an offense does not preclude him from entering a plea of guilty if he is convinced of his guilt." *United States v. Moglia*, 3 M.J. 216, 218 (C.M.A. 1977). Appellant's responses indicate he was convinced of his guilt. We are likewise convinced.

with the transactions. Appellant stated he lacked the funds necessary to cover the checks at the time of their making and he provided the checks with the intent to defraud in exchange for valuable goods.[8] Considering these facts and the military judge's separate, thorough discussion with appellant defining the elements, including knowledge and intent to defraud, we find appellant was provident to these offenses and the military judge did not abuse his discretion in accepting appellant's plea as to Specifications 5, 6, and 7 of Charge IV.

Further, we find there were no matters inconsistent with guilt raised during appellant's providence inquiry regarding his wrongful use of marijuana. Appellant, with minimal prompting from the military judge, clearly articulated his use was both knowing and wrongful. Additionally, no part of his providence inquiry raised voluntary intoxication, lack of mental responsibility, or duress, as possible defenses for that offense. Because of that, we find the military judge did not err in accepting appellant's plea as to Specification 3 of Additional Charge IV.

## CONCLUSION

The findings of guilty as to Specifications 5, 6 and 7 of Charge IV and Charge IV and Specification 3 of Additional Charge IV and Additional Charge IV are AFFIRMED. The remaining findings of guilty and the sentence are SET ASIDE.[9] A rehearing is authorized on the specifications and charges set aside and the sentence.

Judge Penland concurs.

FLEMING, Senior Judge, concurring:

I write to explain my analysis regarding the offenses of desertion, failing to go to the appointed place of duty, absence without leave (AWOL), and disobeying a lawful order because appellant's statements during his providence inquiry substantially raised the defense of duress. In relation to the offenses of failing to go

---

[8] The stipulation of fact entered by appellant also affirmed he "knew he did not have the funds in his account to cover the amount" represented on each check. While a plea must also be rejected as improvident when the stipulation of fact sets up a matter inconsistent with the plea, here, the stipulation further buttresses appellant's providence inquiry. *E.g., United States v. Simpson*, 77 M.J. 279, 280 (C.A.A.F. 2017).

[9] We are mindful of our authority to reassess appellant's sentence. *See United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986); *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013). Given the totality of the record and the findings of guilty that have been set aside, we are not confident we are able to reassess the sentence in this case.

to the appointed place of duty and AWOL, the military judge raised duress by summating appellant's testimony as a situation where "someone was in danger" and "there was some other higher moral calling" regarding that someone. Further, as to the offenses of desertion and disobeying a lawful order, the military judge again referenced duress by telling appellant "the big themes I heard from you" were you "felt like you had no other choice."

Although appellant agreed with the military judge that appellant had no generic "legal justification or excuse" as to any of these offenses, the military judge did not advise appellant regarding the specific "legal justification or excuse" of duress. The military judge did not advise appellant regarding duress nor resolve with appellant whether the defense of duress applied in his situation. The stipulation of fact was also silent as to the issue of duress (or any other defense) and whether appellant was aware of the defense of duress and agreed it did not apply to his situation. Although appellant's concerns regarding "danger," a possible "higher moral calling," and having "no other choice" may have never constituted a viable duress defense at that time he committed or through the entirety of his offenses, the point is we cannot resolve with any level of certainty whether the defense did or did not exist because the military judge failed to develop any factual finding in either direction on the record to clarify the inconsistency.

Appellant's providence inquiry statements, the lack of anything in the stipulation of fact addressing the defense of duress and, most importantly the military judge's statements referencing duress, but failure to instruct or discuss the defense of duress with appellant, raises a substantial basis to question appellant's plea to those offenses. Because I would set aside the finding of guilty to these offenses based on the substantial inconsistency raised on the record in relation to the defense of duress, I find as moot whether any other ground to set aside those offenses exists.

FOR THE COURT:



JAMES W. HERRING, JR.
Clerk of Court